No. 45,042

Louie D. Wycoff, Richard P. Glasscock and Marty C. Glasscock, Husband and Wife, Curtis D. Joy and Ruth A. Joy, *Appellants,* v. Quick Way Homes, Inc., an Oklahoma Corporation, *Appellee.*

(441 P. 2d 886)

Opinion filed June 8, 1968.

*Stuart D. Mitchelson,* of Mission, and *Michael D. Konomos,* of Kansas City, Missouri, argued the cause and were on the brief for appellants.

*John J. Gardner,* of Olathe, argued the cause, and *Stephen C. Chambers,* of Olathe, was with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover damages for the breach of a written contract entered into between the plaintiffs and the defendant on August 14, 1964, whereby the defendant agreed to sell water to the plaintiffs. The district court sustained the defendant's motion for summary judgment and the plaintiffs have appealed.

For convenience, the parties will be referred to as they appeared in the court below.

The plaintiffs are the owners of real properties lying immediately north of Sunflower Village, a subdivision in Johnson County. The defendant, Quick Way Homes, Inc., incorporated in the state of Oklahoma, is the proprietor of Sunflower Village and has a contract with the United States Government to purchase water from the government's ordinance works which is located directly south of Sunflower Village. The contract provides that the water purchased

from the government shall be used by the defendant and "shall not be purchased for resale." There are approximately 1650 people residing in Sunflower Village to whom the defendant supplied water.

On August 14, 1964, the plaintiffs, collectively, entered into the contract with the defendant, which provided that it would furnish to the plaintiffs for their individual usage, and for the usage of their heirs and assigns, a supply of water. It appears that it was the contemplation of the defendant that the source of such water furnished to the plaintiffs was to be purchased by the defendant from the federal government, that is, the defendant would continue to purchase water from the government and would resell a portion thereof to the plaintiffs. The plaintiffs were not advised by the defendant of the restrictive nature of its contract with the government not to "resell" water.

Under the terms of the contract, the plaintiffs agreed to construct and maintain at their expense a two-inch waterline across their properties to connect with a water main on the property of the defendant. The defendant granted a permanent easement for that purpose, such easement to revert to the defendant in the event of nonuse by the plaintiffs.

The plaintiffs agreed to purchase the water at the rate of fifty cents per thousand metered gallons as measured by individual meters which were to be purchased, installed and maintained at their expense at the individual residences located upon their properties.

The contract contained a clause which would permit the defendant, if it so chose, to drill and maintain water wells on land north of the plaintiffs' properties. The water obtained from the wells was to be used to supply Sunflower Village, as well as the plaintiffs, in lieu of the defendant purchasing water from the government.

In that event, the plaintiffs agreed to permit the defendant to use the two-inch line originally to be constructed by the plaintiffs. The plaintiffs' waterline would then be used to bring water from the wells back to Sunflower Village, as well as to the plaintiffs' residences. The plaintiffs granted the defendant a permanent easement for the use of such line, but it would revert to the plaintiffs in the event of nonuse by the defendant. The defendant agreed to maintain the two-inch line at its expense and also to supply

water without charge to one residence, as selected by the plaintiffs, and to supply water as desired to additional residences under the terms previously enumerated.

The plaintiffs laid the pipeline and the water was turned on, and both parties performed under the contract for about ten days. The defendant then breached the contract with the plaintiffs on September 2, 1964, and turned the water off.

The record indicates that in supplying water to the residents of Sunflower Village, the defendant was required to "flush off" some 50,000 gallons of water each month to keep the water from stagnating in the lines, and its contract with the plaintiffs was for the sale of that water. Be that as it may, the record further indicates the government advised the defendant that if it continued to sell the plaintiffs water in violation of its contract with the government, the government would cancel the defendant's contract under the "no resale" clause, thus impairing the defendant's obligation to supply water to the 1650 residents in Sunflower Village.

On September 4, 1964, the plaintiffs commenced an action for a mandatory injunction, case No. 33555, in the district court of Johnson County, to require the defendant to restore the water service. On that date the district court found that the plaintiffs would sustain irreparable harm unless the water was turned on, and issued its order requiring the defendant to restore the water supply immediately. The petition was set for hearing on the merits on September 11, 1964.

On that date, the defendant filed a motion to dismiss the plaintiffs' petition upon the ground the contract sued upon was illegal and void and against public policy, and if carried out, would produce an undue hardship on the defendant and the residents of Sunflower Village. In the alternative, the motion alleged that if the contract be held to be enforceable, that the plaintiffs had an adequate remedy in damages. Following argument of counsel, the court set the matter for hearing on December 7, 1964. On February 18, 1965, it denied the mandatory injunction, and stated:

> "Re: Wycoff et al.
> v.
> Quick Way Homes,
> No. 33555

"Gentlemen:

"I entered an order today denying an injunction to compel performance of the contract. I did this on the ground that the contract was illegal and void

and that performance was an impossibility. I believe also that the water service called for in the contract would come under the provisions of K. S. A. 66-104.

"Respectfully yours,
"/s/ Clayton Brenner."

No appeal was taken from that judgment.

On April 15, 1965, the plaintiffs, Richard and Mary Glasscock and Curtis and Ruth Joy, filed an action, No. 34596, in the district court of Johnson County, division No. 1, against the defendant for breach of the contract, and sought damages in the amount of $17,628.39. Shortly thereafter, plaintiff Louis Wycoff filed a like petition, No. 34829, claiming damages in the amount of $25,000. The defendant moved the court for an order to consolidate both cases, since the plaintiffs in those cases were the joint plaintiffs in case No. 33555. The motion was sustained.

On a date not disclosed by the record, the defendant filed a motion for summary judgment and pleaded that the judgment in the district court in case No. 33555 was *res judicata*, and was a bar to the plaintiffs' action for damages. On May 24, 1966, the district court, division No. 1, overruled the defendant's motion for summary judgment.

Thereafter, the consolidated cases were assigned to division No. 2 of the district court, Judge Clayton Brenner presiding. At a pre-trial hearing on October 4, 1966, the defendant renewed its motion for summary judgment. On October 6, 1966, the court, having reviewed the findings and judgment in case No. 33555, found that the defendant's motion should be sustained for the following reasons:

"1. In case No. 33555, District Court of Johnson County, Kansas, this court held the contract between the plaintiffs and defendant and now the subject of this action, to be illegal and void in that it called for the defendant herein to provide water service to the plaintiffs without complying with the provisions of K. S. A. Chapter 66 and the regulatory provisions of the State Corporation Commission, said contract having called for the defendant to act as a public utility under K. S. A. 66-104.

"2. Subsequent to the decision in case No. 33555, the plaintiffs separately filed suits for damages (now consolidated) on said contract previously held to be void and illegal as above stated.

"3. The court finds that no suit for damages can be maintained on a void and illegal contract."

In accordance with its findings, the court entered judgment in favor of the defendant and taxed the costs against the plaintiffs.

Thereafter, the plaintiffs duly perfected this appeal.

When the district court denied the mandatory injunction in case No. 33555, it determined that the contract between the plaintiffs and the defendant was illegal and void, apparently upon the basis that the defendant was required to supply the water service called for as a public utility in violation of law. (K. S. A. 66-104.) The court had jurisdiction of the parties to the action and of the subject matter, and rendered a judgment within its competency. In the absence of an appeal, that judgment became final and conclusive. (*Farmer v. Farmer*, 177 Kan. 657, 281 P. 2d 1075; *In re Estate of Johnson*, 180 Kan. 740, 308 P. 2d 100.)

We do not here pass upon the rightness or wrongness of the district court's decision in that case, since it is not before us for appellate review. However, the court had power to hear and decide that action, and the right to enter upon inquiry and make a decision is not limited to the power to decide a case rightly, but includes the power to decide it wrongly. (*Bindley v. Mitchell*, 170 Kan. 653, 228 P. 2d 689; *In re Estate of Johnson*, supra.)

In deciding the consolidated cases, the district court removed all doubt as to the basis for its judgment in case No. 33555, and stated positively it held the contract between the parties was illegal and void because "it called for the defendant herein to provide water service to the plaintiffs without complying with the provisions of K. S. A. Ch. 66 or the regulatory provisions of the State Corporation Commission, said contract having called for the defendant to act as a public utility under K. S. A. 66-104."

We construe the district court's judgment to the effect it concluded that since the defendant was engaged in the business of supplying water to 1650 people in Sunflower Village, it was performing that service as a public utility without having complied with the regulatory provisions of the Public Utilities Act (K. S. A. 66-101 *et seq.*), and the contract with the plaintiffs was illegal and void for that reason.

K. S. A. 66-131 provides in effect that no public utility shall transact business in this state until it has obtained the appropriate certificate from the State Corporation Commission that public convenience would be promoted by the transaction of its business as a public utility. The statutory requirement that a public utility procure a proper certificate from the commission was enacted for the protection and welfare of the people. The whole scheme of our law relating to public utilities was for that purpose. The act ex-

pressly recognizes that the sale of services at rates provided to individual customers may be set by private contract when such contract is filed for approval by the commission. (*Central Kansas Power Co. v. State Corporation Commission,* 181 Kan. 817, 827, 316 P. 2d 277.)

Illegal contracts are generally unenforceable. However, in *Latham v. Harrod,* 71 Kan. 565, 81 Pac. 214, it was said that where the agreement is not illegal per se, but is merely prohibitive, and the prohibition was intended for the protection of the complaining party, he is not *in pari delicto* and may be permitted after the transaction is finished, to recover the money or property parted with by him. In that case, a firm of agents representing several fire insurance companies were requested by an officer of a corporation owning property in this state, to insure it in a No. 1 company. The agents caused the property to be insured in a company which had not procured a license to do business in this state. A loss occurred, but the amount of the policy was not collectible from the foreign insurance company. It was said the agents were personally liable to the insured for the amount of the policy, and it was held:

"A policy-holder in a fire-insurance company not authorized to transact business in this state is not *in pari delicto* with the company or its agents." (Syl. ¶ 3.)

See, also, *Mason v. McLeod,* 57 Kan. 105, 45 Pac. 76, 57 A. S. 327, 41 L. R. A. 548; *Stansfield v. Kunz,* 62 Kan. 797, 64 Pac. 614; *Marshall v. Beeler,* 104 Kan. 32, 178 Pac. 245; *Stegman v. Offerle Coöp. Grain and Supply Co.,* 151 Kan. 655, 657, 100 P. 2d 635.

A contract for the sale of water does not violate any requirement of public policy and is not illegal per se. As determined by the district court, the prohibitions of the law were upon the defendant as a public utility, and not upon the plaintiffs. There was nothing illegal about the plaintiffs' contract to purchase water and they cannot be said to be *in pari delicto.* We are of the opinion they are entitled to recover the damages sustained by the wrongdoing of the defendant.

The judgment is reversed with directions to overrule the defendant's motion for summary judgment, and to proceed in accordance with this opinion.