No. 45,622

D. A. HINDMAN and CHARLEY A. LYND, *Appellees*, v. MARY CATHERINE SHEPARD, FRANCES GFELLER, ELIDA MERRITT, CATHERINE MARIE RANSOM, HAROLD ALFRED MORSE, RALPH LELAND MORSE, DONALD EDWARD MORSE, ESTHER RHAECILLA HANSEN, SHIRLEY YVONNE HENDERSON, Defendants, and MARVIN JAMES MORSE, MARGARET CHRISTENSEN, BERNARDINE SCOTT, BARBARA HILLMAN, ANNA ALLEY and LAURA MERRITT, *Appellants*.

(468 P. 2d 103)

Opinion filed April 11, 1970.

*Frank C. Sabatini* and *Joel A. Sterrett,* both of Topeka, argued the cause and were on the brief for appellants Margaret Christensen, Anna Alley, Bernadine Scott, Barbara Hillman and Laura Merritt.

*Marvin James Morse,* also known as *Marvin J. Morse,* of Pinole, California, appellant, filed a brief *pro se.*

*Robert Martin,* of Martin, Porter, Pringle, Schell & Fair of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This action was initiated by plaintiffs, D. A. Hindman and Charley A. Lynd, to quiet their title to 333 acres of land located in Rooks County, Kansas. Some of the defendants answered denying plaintiffs' title and by counterclaim they sought to establish their ownership, to have the plaintiffs ejected and to recover damages for wrongful possession. The plaintiffs prevailed in the court below. This appeal was taken by some of the defendants.

Plaintiffs' (appellees') title to the real estate is based upon a warranty deed from George W. Atherton and wife dated and filed of record on February 11, 1944, conveying the premises to appellee, Charley A. Lynd. In addition a judgment in a quiet title action was entered in 1944 against these same defendants-appellants or their privies. Appellants' counterclaim constitutes a collateral attack upon the prior judgment quieting the title of Charley A. Lynd. The prior judgment was entered April 12, 1944, in Case No. 7807, entitled Lynd v. Hillman, *et al,* in the District Court of Rooks County, Kansas. No appeal was taken from that judgment. Defendants (appellants) contend this judgment is void for fraud and lack of jurisdiction.

The findings by the district court contain the facts necessary to understand the contentions of the parties. Pertinent findings of the lower court are:

"2. At one time, the real estate in question was owned by James E. Atherton, who died testate on July 21, 1925. The will of James E. Atherton was admitted to probate in Rooks County, Kansas. The property in question was devised by paragraph Sixth of the will, which reads:

" 'Sixth: I give, devise and bequeath to my son, George W. Atherton, of Sharon Springs, Kansas, to be held by him and for his use during his natural life time, provided he pays the taxes as they become due and payable on the following described land: All that portion of Section Thirty-two (32), Township Nine (9), Range Nineteen (19), Rooks County, Kansas, lying south of the Union Pacific Railroad right-of-way. After the death of my son, the said George W. Atherton, it is my will and I hereby direct that the last above described real estate shall descend to the children of his body and that the

same be held by them and for their use for a period of twenty (20) years from the time of the death of the said George W. Atherton, after which time the same children of my son, George W. Atherton, shall come into full possession of the said described real estate and may hold the same or dispose thereof in any manner they wish.' "

The present defendants are the children and grandchildren of George W. Atherton.

"3. George [W.] Atherton took possession of the real estate following the death of his father, James E. Atherton, and continued in possession of the property until the occurrence of certain events in 1944. For at least 12 years prior to 1944, George [W.] Atherton failed to pay the taxes on the property. The George [W.] Atherton family was in difficult financial straits in 1944, and for several years before, and the taxes were unpaid because of this condition.

"4. In the fall of 1943, the Board of County Commissioners of Rooks County, Kansas, brought an action (Case No. 7783, styled *Board of Comm. v. Silvers*) to foreclose its lien for delinquent taxes on this and other tracts of real estate in Rooks County. At that time the delinquent taxes on this property totaled $3,045.59. Proper service was made on George [W.] Atherton and his wife, Hattie Atherton, and on each of their eight children.

"5. Shortly after the commencement of the tax foreclosure action, George [W.] Atherton and his wife, employed D. A. Hindman, an attorney in Stockton, Kansas, and one of the plaintiffs in this action, to represent them as counsel in the tax foreclosure case. Hindman, with the knowledge and consent of his clients, prepared and filed an answer in the tax foreclosure action admitting that George [W.] Atherton was the owner of the property and requesting that if the property be sold at tax foreclosure, any surplus in sale proceeds above the amount of delinquent taxes and costs of the proceeding be paid to George [W.] Atherton. In due course, an order was entered in the tax foreclosure proceeding directing that any surplus sale proceeds be paid to George [W.] Atherton.

"6. George [W.] Atherton did not have the money to pay the delinquent taxes on the real estate; prior to the foreclosure sale he and his wife undertook to arrange a private sale of the property under circumstances which would preserve some interest in the mineral estate for themselves and their children. The tax foreclosure sale was to be held February 11, 1944. George [W.] Atherton and his wife, Hattie Atherton, traveled to Wakeeney to meet with the plaintiff Lynd. The plaintiff Hindman was not present at the meeting. On February 10, the day before the sale, Hattie Atherton called Hindman long distance, and informed him that the Athertons and the Lynds had arrived at an agreement by which Lynd would purchase the property and, as consideration for the purchase, would pay the delinquent taxes and an additional amount of $3,000 to George [W.] and Hattie Atherton. It was also agreed that George [W.] and Hattie Atherton would retain or receive by conveyance from Lynd, an undivided 3/8ths interest in the oil, gas and other minerals under the property for a period of twenty (20) years from the date of the transaction and as long as there was production on the property. Hattie Atherton requested Hindman to advance the funds necessary to pay the taxes and redeem the property before sale because it appeared likely that weather conditions would prevent the

Lynds and Athertons from making the trip from Wakeeney to Stockton by the time of the sale. Hindman followed the instructions of his clients and on the following day, February 10, 1944, advanced the funds necessary to pay the delinquent taxes and caused the redemption of the property to be entered in the name of George W. Atherton.

"7. The Lynds and the Athertons went to Stockton and met with the plaintiff Hindman to arrange for closing of the sale transaction. Lynd reimbursed Hindman for the funds advanced in payment of the delinquent taxes. A special warranty deed was prepared, executed and delivered by George W. Atherton and Hattie Atherton, transferring title to the real estate in question to the plaintiff Lynd. Hindman advised the parties that because of the terms of the will of James E. Atherton and doubts or legal questions as to the character of the estate created by the Sixth paragraph of the will which passed title to this property, it would be necessary to commence and successfully conclude a quiet title action in order to vest in the purchasers a merchantable title. During this meeting, a contract of employment between Lynd and his wife and Hindman was prepared and executed, providing, in substance, that Hindman would been titled to receive for his services in connection with the title action an undivided 1/4th interest in the oil, gas and mineral rights in the land for a period of twenty (20) years and as long as oil or gas is produced from the property if he were successful in clearing the title to the property. During the meeting the plaintiff Lynd requested George [W.] and Hattie Atherton to contact their eight daughters and explain the transaction to them in order to be certain that there would be no misunderstandings or hard feelings in the family.

"8. The plaintiff Hindman prepared and filed the papers necessary to commence an action to quiet the title. (Case No. 7807, styled *Lynd v. Hillman,* in the District Court of Rooks County, Kansas.) The eight daughters of George [W.] and Hattie Atherton, along with other parties, were named and joined as defendants. The records on file with the Clerk of this Court in Case No. 7807 (of which the Court takes judicial notice with the consent and stipulation of the parties) reflect that each of the eight children of George W. Atherton and Hattie Atherton were duly and properly served or summoned in the quiet title suit in the manner provided by law. In addition to service by publication on the defendants residing outside the state of Kansas, plaintiff Hindman mailed by registered mail copies of the publication notice to all such defendants, and receipts with signatures of these defendants appearing thereon were returned and filed in Case No. 7807. During the pendency of the quiet title suit, George [W.] and Hattie Atherton contacted each of their daughters to inform them of the transaction with Lynd and the pending quiet title suit. On February 16, 1944, Hattie Atherton wrote plaintiff Lynd, as follows:

" 'We have seen and heard from five of the children and I have written the other three everything is perfectly satisfactory with them and they will do all they can to help clear the title for you either by ignoring the notice the sheriff serves on them and if it is necessary later for them to sign the deed, they will do that. All they want is for the agreement between you, Elida (Lynd), George and I put into writing giving George and I and our heirs 3/8ths of the oil and gas rights or mineral rights for twenty years or as long after as the land produces.' (Plaintiffs' Exh. 5.)

"On April 7, 1944, Hindman, acting on the instruction of his clients, prepared the agreement requested in Hattie Atherton's letter to Lynd. This contract was signed by George [W.] Atherton and his wife, and Lynd and his wife. It provided, in substance, that the Lynds would convey to the Athertons 3/8ths interest in the oil, gas and mineral rights for a period of twenty (20) years and as long as oil is produced from the premises, immediately after completion of the quiet title proceeding.

"9. The Court finds that each of the eight daughters of George [W.] and Hattie Atherton (including May Catherine Shepard, deceased) had actual knowledge of the transaction entered into by their parents with the plaintiff Lynd. They also knew that as a part of that transaction a quiet title suit was commenced and prosecuted in which they were joined and summoned as defendants. The Court also finds that the eight daughters failed to appear and plead or assert any title to the property in the quiet title action and that they did so knowingly and intentionally. None of the defendants acted upon any advice or statement of the plaintiffs. None of the eight children were under any disability which would have prevented them from asserting any claims or rights which they might have had or believed they had at the time of the quiet title suit. The defendants and cross-petitioners in this action have failed to sustain the burden of showing that they were misled, defrauded or overreached by anyone in connection with their failure to appear and litigate the 1944 quiet title action.

"10. The evidence is clear and uncontroverted, and the Court finds, that all communications with the eight daughters of George [W.] and Hattie Atherton which took place during the transaction with Lynd and the commencement and prosecution of the quiet title action, were communications between the children and their parents. Neither Hindman nor Lynd had any communications or made any representations to the children of George [W.] and Hattie Atherton concerning the Lynd transaction or the quiet title suit. There is no creditable evidence adduced by the defendants and cross-petitioners in this action tending to establish that George [W.] or Hattie Atherton were acting as the agents or as conspirators with either of the plaintiffs in connection with any statements made by the parents to their children concerning the Lynd transaction or the quiet title suit. The evidence adduced by all of the parties convinces the Court that Lynd and Hindman were at all times acting in good faith. The Court also believes that at the time of the tax foreclosure the transaction with Lynd and the quiet title action, George [W.] Atherton and his wife were acting in good faith and pursued the course which they believed to be the most reasonable and best one available to them to salvage some interest in the land for themselves and for their children.

"11. On April 12, 1944, judgment was entered in the quiet title action (Case No. 7807) quieting title to the fee simple interest in the real estate in the plaintiff Lynd, and declaring the defendants in that action to have no right, title or interest in the property. No appeal was taken from that judgment. At the time of the trial and final hearing in that action, the Lynds and Athertons were present in the courtroom. There was no misstatement or misrepresentation by anyone present concerning the interest, position or failure to appear and plead, of the children of George [W.] and Hattie Atherton. The plaintiff Lynd entered into possession of the property and has remained

in possession and has payed (sic) taxes on the surface and 3/8ths of the mineral estate since that date. The plaintiff Hindman entered into possession of an undivided 1/4th interest in the mineral estate.

"12. On or about June 15, 1944, the Lynds and the Athertons concluded the transaction between them. Lynd paid George [W.] Atherton the sum of $3,000, the balance of the purchase price of the property. Lynd and his wife executed royalty or mineral deeds to George W. Atherton and his wife, and to plaintiff Hindman, which conformed to and carried out the terms of the written agreements between them.

"13. At various times since 1944, the plaintiffs and their wives and George [W.] and Hattie Atherton joined in the execution of oil and gas leases covering all or parts of the property in question. Oil production was first discovered on the property in 1951, but these wells were subsequently plugged and abandoned. In 1960, production was again discovered, and there are several producing wells on the property at the present time.

"14. When George [W.] and Hattie Atherton received the payment of $3,000 from the plaintiff Lynd, in the summer of 1944, they paid to each of their daughters the sum of $100. The children knew and understood that this money was a part of the consideration received by their parents in the Lynd transaction. When oil was discovered and first produced from the property in 1951, George [W.] and Hattie Atherton distributed portions of the royalties received by them to their eight daughters, who accepted and retained these payments with knowledge of the source from which they came. George [W.] Atherton died in 1961, and Hattie Atherton died in 1963 [1964]. Following the death of their parents, the eight daughters of George [W.] and Hattie Atherton succeeded to the 3/8ths mineral and royalty interest acquired by their parents in the Lynd transaction. Since the probate of their parents' estates, they have been paid, and have accepted and retained, their proportionate share of the oil and gas royalties accruing to the 3/8ths royalty interest owned by their parents. The defendants executed division orders with the purchasers of crude oil from the premises under which they were paid their respective shares of the 3/8ths royalty interest owned by their parents.

"15. The defendants failed to take any action or commence any legal proceedings to assert any right, title or interest in the property or set aside the judgment in Case No. 7807 for more than twenty (20) years after the Lynd transaction and the entry of judgment in Case No. 7807. On March 25, 1960, the defendant Margaret Christensen (then Margaret Jewkes) executed and delivered a Quit Claim Deed to the property in question in which her father George [W.] Atherton was named as the grantee."

The trial court's conclusions of law included the following:

"1. The Court has jurisdiction of the parties and this action.

"2. The defendants and cross-petitioners have failed to sustain the burden of proof to show that they were defrauded or in any way unlawfully deprived of an interest or expected interest in the real estate involved in this action.

⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"4. The defendants' claims in this action, and their cross-petitions, amount to an improper collateral attack upon the judgment of this Court in Case No. 7807, *Lynd v. Hillman,* et al.

"5. The judgment in Case No. 7807 is res judicata and conclusive of the defendant's claims asserted and litigated in this action.

"6. The defendants' cross-petitions are denied and plaintiffs are entitled to judgment against the defendants and each of them for the relief sought in their petition. Counsel for plaintiffs will prepare and submit an appropriate Journal Entry of Judgment."

A majority of the twenty-six points raised on appeal are based upon contentions by appellants that the trial court erred in its findings of fact. For us to accept these contentions it must appear there is no substantial evidence in the record supporting the trial court's findings. (*Fine v. Neale Construction Co.,* 186 Kan. 537, 352 P. 2d 404.) Normally, findings of a negative character will not be set aside on appellate review since adequate opportunity for weighing evidence and determining credibility of witnesses is lacking. (*Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1.) Findings of fact will not be set aside on appellate review if substantially supported by competent evidence, nor will a judgment be overturned for insufficiency of evidence when there is substantial competent evidence to sustain it. (*In re Estate of Countryman,* 203 Kan. 731, 457 P. 2d 53.)

We have examined the evidence in the record. The district court's findings of fact are supported by substantial evidence.

As previously mentioned the appellants' counterclaims constitute a collateral attack upon the 1944 decree quieting title and are based upon a claim of fraud which is the paramount issue in the case.

The trial court found that there was no fraud in connection with the 1944 quiet title action. If the appellants are not able to prevail on this issue any contentions that they are remaindermen under their grandfather's will have already been adversely adjudicated and disposed of by the judgment in the 1944 quiet title action. The appellants have argued that *res judicata* is not applicable solely because the judgment in 1944 was obtained by fraud. This judgment, if valid, cuts off any right or title they could possibly have had to the property.

The appellants claim that the judgment in the 1944 case was fraudulent because their position with respect to the relief sought was misrepresented to the court. The trial court in the present case found exactly to the contrary. The evidence which supports this important finding is primarily the testimonies of Hindman, Wayne McCaslin and Clarence Lynd. Mr. Hindman testified that there was no statement made to the court during the quiet title hearing

as to why the Atherton sisters were in default, nor was there a statement made to the court that everyone was jointly asking for the same relief. Mr. McCaslin, who was a court appointed attorney in the case, and Clarence Lynd testified that they did not hear any statements during the hearing concerning the appellants' positions or reasons why they were not in appearance.

Those were the only witnesses who were present at the hearing in 1944. No testimony was given by any of the defendants that they talked or corresponded with Hindman or Lynd during the time of the 1944 quiet title proceeding. The testimony of these witnesses supports the trial court's finding that judgment was not obtained by fraud.

Another contention concerning fraud on the appellants is that they did not appear because they were led to believe by their mother that their rights would not be affected. There is no question that the defendants received notice of the 1944 suit. If they were misled by their mother as to its import such cannot be attributed to Hindman or Lynd. However, the evidence clearly showed that some of the Atherton sisters were not misled.

Mrs. Alley testified that the reason she did not make an appearance in the case was because she did not like to get involved in lawsuits. Mrs. Shepard wrote a letter to her parents in 1951 or 1952, which was plaintiffs' Exhibit 10. The letter stated in part:

"Am sorry the girls can't dry up—it's so foolish. If Uncle Charley was good enough to save what ever there is there, they should realize he's been the one who's made it possible for them to have anything. I'm sure I wouldn't bite the hand that did a favor."

Plaintiffs' Exhibit 11 is a letter from Mrs. Christensen in which she wrote:

"We would have lost the place for taxes if uncle Charlie hadn't came to the aid of the folks at that time. We all known (sic) it. The deed to Charlie can't be broken after a decree quieting title to the place. We had our chance then and didn't anyone take it. We were glad that Dad could get enough out of it to pay off the debts that he had and to take a pension and try to enjoy life."

Mrs. Hillman and some of her sisters acknowledged that their father had divided part of the proceeds from the sale of the farm with them. These letters and testimony of the appellants further support the trial court's findings that no fraud or misrepresentation existed in connection with the 1944 quiet title action.

In further support of this claim of fraud appellants point out

that five years after the decree quieting plantiff Lynd's title to the real estate a subsequent action was filed. This subsequent action related to a similar provision (the fourth paragraph) of the James E. Atherton will. Although identical language was employed in the fourth paragraph it devised different land, and the action was between different parties. Plaintiff Hindman was employed as local counsel in that case but a different result was reached. In that case the judgment of the trial court was affirmed on appeal to this court. It was held that the language of paragraph four of the will created a life estate with a vested remainder and not a fee tail estate. (*Wood River Oil & Refining Co. v. Madden,* 169 Kan. 633, 220 P. 2d 154.)

It is a well-established rule that when a court has jurisdiction of the parties to an action and of the subject matter and renders a judgment within its competency such judgment is final and conclusive unless corrected or modified on appeal. (*McFadden v. McFadden,* 187 Kan. 398, 357 P. 2d 751; *In re Estate of Mullin,* 201 Kan. 756, 763, 443 P. 2d 331.) The jurisdiction and authority of a court to enter upon inquiry and make a decision is not limited to the power to decide a case rightly but includes the power to decide it wrongly. (*Wycoff v. Quick Way Homes, Inc.,* 201 Kan. 442, 446, 441 P. 2d 886.) The test of jurisdiction is not a correct decision but a right to enter upon inquiry and make a decision. There must be some finality in judicial decisions and it is generally held that jurisdiction includes the power to decide a case wrongly.

It may be conceded that the decision rendered in 1944 in Case No. 7807, Lynd v. Hillman, *et al,* was erroneous in light of the Woods River Oil case but the judgment was not corrected or modified on appeal. Proof that the judgment was erroneous will not overturn the trial court's finding that no fraud was practiced in obtaining the judgment. The court's finding that no fraud was practiced is based upon substantial evidence.

Appellants predicate error upon the refusal of the trial court to grant their demand for a jury trial. The trial court determined that the issues pertaining to the ownership of the property should be tried to the court first. Consequently, the appellant's claim for damages fell and was disposed of on a determination of the issue of ownership.

A civil litigant's constitutional right to a trial by jury (Constitution of Kansas, Bill of Rights, § 5, and U.S. Constitution, Amend-

ment 7) is predicated on whether the action at common law was one of law or in equity. In determining this question the court should look at the essential nature of the controversy between the parties. (*Sutherland v. Sutherland,* 187 Kan. 599, 602, 358 P. 2d 776.) This principle is reaffirmed in our statutes, K. S. A. 60-238 and K. S.A. 60-239. The trial of all jury issues demanded should be by jury unless the court upon motion, or of its own initiative, finds that a right of trial by jury of the controlling issues does not exist under the constitution and statutes. (K. S. A. 60-239 (a) (2).)

Appellants and appellees in this case sought to quiet their respective titles to this land. In Kansas quiet title actions instituted by a plaintiff in possession generally involve matters of equitable cognizance and are triable without a jury. (*Farmers State Bank v. Lanning,* 162 Kan. 95, 174 P. 2d 69.)

It is obvious from the pleadings that the controlling issue in the case concerns the validity of the 1944 quiet title decree. Appellants' request to set aside this judgment is based upon alleged fraud in obtaining the judgment. A court derives jurisdiction to set aside a judgment by exercising its equitable powers. These equitable powers enable the court to set aside a judgment obtained by fraud. (*Leslie v. Manufacturing Co.,* 102 Kan. 159, 163, 169 Pac. 193; 49 C. J. S., Judgments § 341, p. 690.) It follows that relief from a judgment because of fraud originates in equity and a right to a jury trial does not generally exist on a claim to set aside the judgment. (*Carrigg v. Anderson,* 167 Kan. 238, 243, 205 P. 2d 1004, 9 ALR 2d 545; C. J. S., Juries §§ 37, 38, p. 753.)

Under our present rules of civil procedure a judge in the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy may order a separate trial of any claim, counterclaim or of any separate issue. (See K. S. A. 60-242 (b), now K. S. A. 1969 Supp. 60-242 (b) as amended in 1969.)

The controlling issues tried by the court which determined the claims of all parties to this action were essentially equitable in nature. No constitutional right to a trial by jury was violated when these controlling equitable issues were separated and tried by the court.

Appellant Morse next contends on appeal that the court did not obtain jurisdiction over certain persons in the 1944 quiet title action. He states that non-resident defendants were served only by pub-

lication service. The defendants referred to are the husbands of the daughters of George W. Atherton. It appears these husbands were residing with their wives outside the state of Kansas at the time publication service was perfected. The wives received notices of the pendency of the proceedings by registered mail.

The inchoate interest of a husband in the wife's real property declared in K. S. A. 59-505 does not include such real estate as is taken by legal proceeding prior to the death of the wife. The husband in such case is not an indispensable party to the proceeding. (K. S. A. 59-505; *Mosteller v. Gorrell*, 41 Kan. 392, 21 Pac. 232; *Steffins v. Stewart*, 53 Kan. 92, 36 Pac. 55.) No specific defect in the publication service upon these defendants is pointed out and we find none. In addition we do not consider these defendants indispensable parties to the action. One spouse has no direct interest in property inherited by the other, and such spouse has no rights or liabilities in connection with litigation between sibling heirs. (*Rost v. Heyka*, 133 Kan. 292, 299 Pac. 969; *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P. 2d 840.)

Appellant Morse contends that George W. Atherton and Hattie Atherton were indispensable parties to the action by reason of their being the sole heirs of a son who died in 1934. Whatever interest they may have inherited in the property from this son in 1934 was conveyed by warranty deed to plaintiff Lynd in 1944. They were not indispensable parties to the action.

Various other parties identified by appellant Morse as improperly omitted from the proceedings were not the "children" of James E. Atherton referred to in the sixth and eleventh paragraphs of his will. They were not contingent beneficiaries and were neither proper nor indispensable parties to the action. We are unable to find any defect in the parties joined in the 1944 quiet title action. The daughters of George W. Atherton were served individually and as representatives of a class. George W. Atherton has since died. He left no additional children of his body. All contingent beneficiaries named in the will were properly joined in the action.

Appellant Morse also attacks the findings of the trial court which appear to be based upon the plaintiffs' exhibits. These exhibits although offered in evidence were objected to by appellant. The court reserved its rulings on the objections. The record contains nothing further concerning their admission. The court's findings of fact indicate the exhibits were considered by the court in ar-

riving at a decision. It appears these exhibits were relevant evidence and under the circumstances they were properly considered by the court regardless of the state of the trial record. (*Sailor v. Caldwell,* 65 Kan. 86, 68 Pac. 1085; *State v. Bowman,* 80 Kan. 473, Syl. ¶ 3, 103 Pac. 84; *State v. Oswald,* 197 Kan. 251, 255, 417 P. 2d 261.) No prejudicial error is shown.

Appellant Morse contends the trial court did not have jurisdiction to decide this case and argues the United States Courts have sole and exclusive jurisdiction over the real estate in question. This contention arises because of proceedings previously commenced in the United States District Court for the District of Kansas and carried on appeal to the United States Court of Appeals, Tenth Circuit. That action concerns this same claim of the appellants to this real estate.

On October 11, 1968, The Honorable George Templar, United States District Judge for the District of Kansas, entered an order in that case (No. T-3987, Shepard, *et al.* v. Hindman, *et al.*) granting a stay of further proceedings in that court. The stay order reads in part as follows:

"One of the plaintiffs, Marvin J. Morse, has announced to this Court that a new trial is being sought from the judgment rendered against him and the other plaintiffs by the Rooks County State Court, and if the motion is overruled, that an appeal will be taken by them to the Kansas Supreme Court. Under such circumstances, it is the view of this Court that a stay of further proceedings should be granted as requested by defendants Hindman and Lynd until the motion for a new trial in the Rooks County State Court is determined, and if denied, until the contemplated appeal is heard and determined by the Kansas Supreme Court in that case. Thereafter, the Court will consider any further proceeding required by the facts and circumstances as they then appear.

"IT IS BY THE COURT SO ORDERED."

The stay order contains the reasoning and the authorities upon which it is based. We see no reason for further examination of appellant Morse's contention. The United States District Court has denied the contention that exclusive jurisdiction exists in that court. Mr. Morse now asks that we hold to the contrary. This we decline to do.

We have examined all twenty-six points raised on appeal by the appellants. Time and space will not permit us to treat each point separately. Suffice it to say the trial court's findings are substantially supported by competent evidence appearing in the

record. The appellants' claim constitutes a collateral attack upon the 1944 judgment quieting plaintiff Lynd's title to this property. The district court had jurisdiction of the parties to that action and of the subject matter. Such judgment is final and conclusive for it was not corrected or modified on appeal.

Questions raised concerning statutes of limitation and laches are therefore academic and need not be examined.

The judgment is affirmed.