No. 117,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALYSIA R. TILLMAN
and
STORM FLEETWOOD,
*Appellants*,

v.

KATHERINE A. GOODPASTURE, D.O.,
*Appellee*.

OFFICE OF ATTORNEY GENERAL DEREK SCHMIDT,
*Intervenor*.

SYLLABUS BY THE COURT

1.

When we review a motion for judgment on the pleadings, we assume the facts alleged in the petition are true.

2.

Determining a statute's constitutionality is a question of law subject to unlimited de novo review. The party attacking the constitutionality of a statute has the burden of proof to show the statute is unconstitutional. The appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent.

3.

Section 5 of the Kansas Constitution Bill of Rights preserves the right to a jury trial as the right existed at common law when our Constitution was adopted.

4.

The Kansas Supreme Court recognized wrongful birth as a new tort in *Arche v. United States of America*, 247 Kan. 276, 798 P.2d 477 (1990), not an extension of an already existing claim for medical malpractice. The new tort of wrongful birth fashioned in *Arche* in 1990 was based on public policy that sprang into being in 1973 with *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), and could not have existed in 1859 just because the tort of medical malpractice existed in 1859.

5.

Section 5 only applies to those causes of action recognized in 1859. Thus, Section 5 is not implicated in this case, and the Legislature was within its power to enact K.S.A. 2013 Supp. 60-1906.

6.

Section 18 of the Kansas Constitution Bill of Rights provides:  "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." Section 18 only applies to causes of action existing at common law when the Kansas Constitution was adopted.

7.

K.S.A. 2013 Supp. 60-1906 is constitutional.

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed June 15, 2018. Affirmed.

*Lynn R. Johnson, David R. Morantz,* and *Paige L. McCreary*, of Shamberg, Johnson & Bergman, Chtd., of Kansas City, Missouri, and *Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellants.

*Dustin J. Denning* and *Jacob E. Peterson*, of Clark, Mize & Linville, Chartered, of Salina, for appellee Katherine A. Goodpasture, D.O.

*Bryan C. Clark*, assistant solicitor general, and *Dwight R. Carswell*, assistant solicitor general, for intervenor Office of Attorney General Derek Schmidt.

Before SCHROEDER, P.J., GARDNER, J., and BURGESS, S.J.

SCHROEDER, J.: The Kansas Legislature is vested with setting the public policy of our state. Even though some may disagree with that public policy, we must accept that policy unless it conflicts with our Constitution. On appeal, Alysia R. Tillman and Storm Fleetwood challenge the denial of their cause of action, first recognized by our Kansas Supreme Court in *Arche v. United States of America*, 247 Kan. 276, 798 P.2d 477 (1990). In 2013, our Legislature passed K.S.A. 60-1906, stating no cause of action exists in Kansas for wrongful birth of a child. The district court granted Dr. Katherine A. Goodpasture, D.O.'s motion for judgment on the pleadings. The district court found K.S.A. 2013 Supp. 60-1906 was constitutional, finding Section 5 and Section 18 of the Kansas Constitution Bill of Rights did not protect this cause of action since wrongful birth was not a cause of action recognized in 1859 when our Constitution was adopted. We agree with the district court. K.S.A. 2013 Supp. 60-1906 is constitutional since a cause of action for wrongful birth was unavailable when our Constitution was adopted and thus does not implicate Sections 5 or 18 of the Kansas Constitution Bill of Rights. We affirm.

FACTS

Tillman and Fleetwood filed a wrongful birth action against Dr. Goodpasture resulting from the birth of their daughter, Baby A. They alleged Dr. Goodpasture failed to diagnose severe structural abnormalities and defects in the fetus' brain. In utero, Baby A

was subsequently diagnosed with schizencephaly and is alleged to be severely and permanently neurologically, cognitively, and physically handicapped.

Tillman and Fleetwood alleged Dr. Goodpasture's failure to diagnose appropriately the structural abnormalities and defects denied them the right to make an informed decision on whether to terminate the pregnancy and, had they been informed of the physical, neurological, and cognitive defects, they would have terminated the pregnancy. Tillman and Fleetwood also alleged K.S.A. 2013 Supp. 60-1906 violated Section 5 and Section 18 of the Bill of Rights by denying them their right to trial by jury and their right to remedy by due course of law. They sought damages over $75,000 and a determination K.S.A. 2013 Supp. 60-1906 was unconstitutional.

Dr. Goodpasture moved for judgment on the pleadings contending K.S.A. 2013 Supp. 60-1906 barred Tillman and Fleetwood's cause of action. Tillman and Fleetwood responded, arguing K.S.A. 2013 Supp. 60-1906 was unconstitutional. The State moved to intervene to defend the constitutionality of K.S.A. 2013 Supp. 60-1906. The district court heard argument on the motion for judgment on the pleadings and granted the State's motion to intervene. After the hearing, the district court allowed supplemental briefing.

Upon receipt of the supplemental briefing, the district court granted Dr. Goodpasture's motion for judgment on the pleadings. It found *Arche*, which recognized wrongful birth as a new cause of action in Kansas in 1990, required proof of two additional elements beyond the elements necessary to prove ordinary negligence. As a result, the district court found wrongful birth was a new cause of action that did not exist when the Kansas Constitution was adopted in 1859, and thus K.S.A. 2013 Supp. 60-1906 did not implicate Section 5 or Section 18 of the Bill of Rights.

4

Procedurally, this matter comes to us from the district court's grant of Dr. Goodpasture's motion for judgment on the pleadings. In this posture, we presume the facts alleged in the petition are true.

The appellants' motion to transfer this appeal to the Kansas Supreme Court was denied.

ANALYSIS

In 1990, the Kansas Supreme Court first recognized a cause of action for wrongful birth in *Arche*. In a tort of wrongful birth, "suit is brought by the parents, who claim they would have avoided conception or terminated the pregnancy had they been properly advised of the risks or existence of birth defects to the potential child." 247 Kan. at 278.

In 2013, the Legislature enacted K.S.A. 60-1906(a):

> "No civil action may be commenced in any court for a claim of wrongful life or wrongful birth, and no damages may be recovered in any civil action for any physical condition of a minor that existed at the time of such minor's birth if the damages sought arise out of a claim that a person's action or omission contributed to such minor's mother not obtaining an abortion."

On appeal, Tillman and Fleetwood challenge the constitutionality of K.S.A. 2013 Supp. 60-1906. Determining a statute's constitutionality is a question of law subject to unlimited review. The appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015). It is the duty of the party attacking the statute to sustain its burden of proof the statute is

unconstitutional. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 616, 576 P.2d 221 (1978).

*K.S.A. 2013 Supp. 60-1906 does not implicate Section 5 of the Bill of Rights.*

Tillman and Fleetwood argue K.S.A. 2013 Supp. 60-1906 violates Section 5 of the Bill of Rights, which guarantees the right to a jury trial, because their claim for wrongful birth was an action seeking monetary damages. Since they sought monetary damages, they argue wrongful birth is an action at law triable to a jury when our Constitution was adopted, and they are guaranteed a trial by jury.

In contrast, Dr. Goodpasture and the State argue K.S.A. 2013 Supp. 60-1906 does not violate Section 5 of the Bill of Rights because Section 5 only applies to specific causes of action justiciable in 1859. Since abortion was illegal in Kansas until 1973 and the Kansas Supreme Court first recognized a cause of action for wrongful birth in *Arche*, as a *new tort*, Dr. Goodpasture and the State contend Section 5 does not apply to wrongful birth claims.

Section 5 of the Bill of Rights states: "The right of trial by jury shall be inviolate." It preserves the jury trial right as the right existed at common law when our Constitution was adopted. *Miller v. Johnson*, 295 Kan. 636, 647, 289 P.3d 1098 (2012). In *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 349, 789 P.2d 541 (1990), *abrogated on other grounds by Miller*, 295 Kan. 636, the Kansas Supreme Court described the common law:

> "The common law can be determined only from decisions in former cases bearing upon the subject under inquiry. As distinguished from statutory or written law, the common law embraces that great body of unwritten law founded upon general custom, usage, or common consent, and based upon natural justice or reason. It may

6

otherwise be defined as custom long acquiesced in or sanctioned by immemorial usage and judicial decision. 15A Am. Jur. 2d, Common Law § 1.

"In a broader sense, the common law is the system of rules and declarations of principles from which our judicial ideas and legal definitions are continually derived. See generally *Steele v. Latimer,* 214 Kan. 329, 332, 521 P.2d 304 (1974). It is not a codification of exact or inflexible rules for human conduct, the redress of injuries, or protection against wrongs; rather, it is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason and an innate sense of justice, and adopted by common consent for the regulation and government of the affairs of men. 15A Am. Jur. 2d, Common Law § 1."

In *Hoffman v. Dautel*, 189 Kan. 165, Syl. ¶ 2, 368 P.2d 57 (1962), the Kansas Supreme Court held: "The common law is not static, but is endowed with vitality and a capacity to grow. It never becomes permanently crystalized but changes and adjusts from time to time to new developments in social and economic life to meet the changing needs of a complex society."

The Kansas Supreme Court recently addressed the Section 5 analysis:

"Although our caselaw has never explicitly acknowledged it, there are two basic questions in any Section 5 analysis: In what types of cases is a party entitled to a jury trial as a matter of right? See, *e.g.*, *Hasty v. Pierpont*, 146 Kan. 517, 72 P.2d 69 (1937) (distinguishing causes at law from causes in equity) . . . . And when such a right exists, what does the right protect? See, *e.g.*, *Miller*, 295 Kan. at 647-48 (analyzing jury's role in determining damages); *Kimball v. Connor*, 3 Kan. 414, 432 (1866) ('[Section 5] . . . does [not] contemplate that every issue, which, by the laws in force at the adoption of the constitution of the State, was triable by jury . . . should remain irrevocably triable by that tribunal.').

"In answering the second question, this court has consistently noted that when the Section 5 jury trial right is implicated, '"[i]t applies no further than to give the right of such trial *upon issues of fact so tried at common law* and does not affect the pleading stage of the case."' (Emphasis added.) *Hasty*, 146 Kan. at 519. The right to have the jury determine issues of fact is in contrast to the determination of issues of law, which has

7

always been the province of the court. See, *e.g.*, General Laws of the Territory of Kansas, 1859, ch. 25, sec. 274 ('That issues of law must be tried by the court . . . . Issues of fact arising in an action, for the recovery of money, or specific, real or personal property, shall be tried by a jury.'). Issues of fact for the jury to determine include liability and actual damages in civil cases and guilt in criminal cases. See *Miller*, 295 Kan. at 648 (damages are jury issue under Section 5, citing *Samsel v. Wheeler Transport Services Inc.*, 246 Kan. 336, 358, 789 P.2d 541 [1990]); *Smith v. Printup*, 254 Kan. 315, 324, 866 P.2d 985 (1993) (punitive damages not independent cause of action; no Section 5 protection)." *State v. Love*, 305 Kan. 716, 735-36, 387 P.3d 820 (2017).

Undeniably, common-law tort actions were historically triable to a jury. *Miller*, 295 Kan. at 647. Similarly, wrongful birth is undeniably a tort. See *Arche*, 247 Kan. at 294 (Six, J., concurring). Thus, the question is whether Section 5 preserves a right to a jury trial in every tort—since the right to a jury trial generally applied to torts at common law—or whether Section 5 only applies to torts recognized in 1859. If Section 5 of the Bill of Rights applies generally to torts, K.S.A. 2013 Supp. 60-1906 is unconstitutional. That said, if Section 5 only applies to specific causes of action recognized in 1859, K.S.A. 2013 Supp. 60-1906 is not unconstitutional since the Kansas Supreme Court first recognized a cause of action for wrongful birth in 1990 and it was called a *new tort* in Justice Six's concurrence.

*Section 5 only applies to torts recognized in 1859.*

We have been unable to find any case in Kansas where a court has addressed whether Section 5 guarantees the right to a jury trial in a common-law tort first recognized after the Kansas Constitution's adoption. Historically, the Kansas Supreme Court has considered the general nature of the cause of action—whether equitable, statutory, or an action at law—rather than the specific cause of action alleged in determining whether Section 5 applies. See *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 343, 757 P.2d 251 (1988), *disapproved of on other grounds by Bair v.*

*Peck*, 248 Kan. 824, 811 P.2d 1176 (1991); *Hindman v. Shepard*, 205 Kan. 207, 215-16, 468 P.2d 103 (1970); *Swarz v. Ramala*, 63 Kan. 633, 636, 66 P. 649 (1901); *Kimball and others v. Connor, Starks and others*, 3 Kan. 414, 432 (1866). Based on this caselaw, whether a party is entitled to a jury trial seemingly depends on whether the case was triable by jury at common law before the adoption of the Constitution.

That said, in *Lemuz v. Fieser*, 261 Kan. 936, 933 P.2d 134 (1997), the Kansas Supreme Court seemingly implied the Kansas Constitution protected only specific causes of action existing at the time of its adoption. In determining whether a statute implicated Section 18 of the Bill of Rights, the Kansas Supreme Court wrote: "[C]orporate negligence causes of action *are not 'new' causes of action but are simply different applications of the basic concepts of negligence which existed at common law when the Kansas Constitution was adopted*. As such, corporate negligence causes of action are protected by § 18." (Emphasis added.) 261 Kan. at 945. The Kansas Supreme Court felt compelled to explain corporate negligence—which is clearly a tort—was protected by the Kansas Constitution because it was simply a different application of negligence—a tort recognized in 1859. To us, this is strong evidence Section 5 only applies to specific causes of action recognized in 1859. *Lemuz* is the only case we have found that seems to require a specific cause of action to have been recognized in 1859 to be protected by the Constitution. But *Lemuz* is also the most recent case addressing this issue, so we find it controls. Thus, we hold Section 5 of the Kansas Constitution applies only to specific torts, like negligence, existing at common law in 1859.

*Is wrongful birth a new tort?*

In *Arche*, the United States District Court for the District of Kansas certified two questions to the Kansas Supreme Court under K.S.A. 60-3201:

9

"1. Does Kansas law recognize a cause of action for the wrongful birth of a permanently handicapped child?

"2. If Kansas does recognize such a cause of action, what is the extent of damages which may be recovered upon proper proof?" 247 Kan. at 276.

Chief Justice Miller began *Arche* by declaring: "This is a medical malpractice wrongful birth action." 247 Kan. at 276. In its analysis, the Kansas Supreme Court set forth the elements to prove a medical malpractice action in Kansas: "'(1) that a duty was owed by the physician to the patient; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient.'" *Arche*, 247 Kan. at 281 (quoting *Wozniak v. Lipoff,* 242 Kan. 583, 587, 750 P.2d 971 [1988]). After recognizing a cause of action for wrongful birth, the *Arche* court continued:

"In recognizing a cause of action for wrongful birth in this state, we assume that the child is severely and permanently handicapped. By handicapped, we mean, in this context, that the child has such gross deformities, not medically correctable, that the child will never be able to function as a normal human being. We further assume that there is negligence on the part of the defendants; that the gross defects of the child could have been determined by appropriate testing prior to birth; that defendants owed plaintiffs a duty to perform such tests; and that no such tests were offered or performed, or if performed, were negligently performed." 247 Kan. at 281.

In arguing wrongful birth is a theory of medical malpractice, Tillman and Fleetwood focus their argument on Chief Justice Miller's opening sentence and the latter half of the quoted paragraph. They contend *Arche* assumed as true the elements of a medical malpractice cause of action. They also argue a majority of jurisdictions recognize wrongful birth as a common-law negligence action. Even so, the list of cases they discussed has not changed in 28 years and is identical to the list of 20 cases discussed in *Arche.* See 247 Kan. 278-79.

10

In contrast, Dr. Goodpasture and the State argue wrongful birth is a *new tort*, focusing on the first half of the quoted paragraph and Justice Six's concurring opinion. They contend *Arche* set forth additional elements which must be proven to show wrongful birth. They argue a plaintiff must show the child is "severely and permanently handicapped," the disabilities are "not medically correctable," and "the child will never be able to function as a normal human being."

Dr. Goodpasture and the State have the better argument. First, the *Arche* court assumed there was negligence on the part of the defendants *and* assumed the child was severely and permanently handicapped. This latter element is necessary to prove the new tort of wrongful birth but is not necessary to prove the traditional tort of medical malpractice. The court defined "handicapped, [to] mean, in this context, that the child has such gross deformities, not medically correctable, that the child will never be able to function as a normal human being." *Arche*, 247 Kan. at 281. Implicitly, then, the additional elements required to prove wrongful birth in Kansas change the complexity of the cause of action from one recognized at common law. Furthermore, Tillman and Fleetwood's petition seemingly acknowledges severe and permanent handicap is an additional element of wrongful birth. In addition to pleading the usual elements of negligence—duty, breach of that duty, causation, and damages—the petition also alleges: "Baby A is *severely and permanently* neurologically, cognitively and physically disabled and *handicapped*. Baby A's severe and permanent neurological, cognitive and physical injury resulting from her schizencephaly is *not medically correctable* and Baby A *will never be able to function with normal* neurological, cognitive or physical activity." (Emphases added.) If severe and permanent handicap is not an element of wrongful birth, there would be no reason to quote this language from *Arche* in the petition.

Second, the Kansas Supreme Court could have stated wrongful birth was a different application of the concept of negligence. In *Lemuz,* the court established corporate negligence causes of action were "simply different applications of the basic

11

concepts of negligence." 261 Kan. at 945. Similarly, in some cases *Arche* cites as recognizing wrongful birth, the courts specifically held wrongful birth was an extension of negligence. See, e.g., *Naccash v. Burger*, 223 Va. 406, 413, 290 S.E.2d 825 (1982) ("'[The] holding that the [parents] have stated a cause of action for damages caused by negligence in the performance and interpretation of an amniocentesis *involves the application of the doctrine of negligence . . .* to a recently developed medical procedure.'" [Emphasis added.]) (quoting *Gildiner v. Thomas Jefferson Univ. Hospital*, 451 F. Supp. 692, 696 [E.D. Pa. 1978]); *Harbeson v. Parke-Davis, Inc.*, 98 Wash. 2d 460, 476, 656 P.2d 483 (1983) ("The action for wrongful birth, therefore, *fits within the conceptual framework of our law of negligence*. An action in negligence claiming damages for the birth of a child suffering congenital defects may be brought in this state." [Emphasis added.]). The fact *Arche* did not similarly state wrongful birth was simply a different application of negligence suggests it is a new tort.

Third, in his concurring opinion, Justice Six referred to wrongful birth as both a "new claim" and a "new tort." *Arche*, 247 Kan. at 292, 294-95 (Six, J., concurring). The majority could have corrected Justice Six and stated wrongful birth fit within the conceptual framework of negligence. It did not. Thereafter, the Supreme Court referred to wrongful birth as "a new cause of action based on public policy." *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 314, 918 P.2d 1274 (1996). Coupled with the fact *Arche* requires at least one additional element, and has special rules for determining damages and the management of them during the child's life, it seems clear the Kansas Supreme Court recognized wrongful birth as a new tort, not an extension of an already existing claim for medical malpractice.

Fourth, wrongful birth is based on public policy that did not exist in 1859. Even if the elements of wrongful birth were identical to those of a traditional medical malpractice case, the tort itself is unlike anything on which a person had a right to a jury trial or a right to a remedy in Kansas in 1859. As *Arche* recognized, the objective of a wrongful

12

birth action is different than that of a typical tort action: "The aim of a tort action is to restore the plaintiff to the position he or she would have occupied had the injury not occurred. However, in a wrongful birth case, the result of the tortious conduct is the existence, or benefit, of a child. [Citation omitted.]" 247 Kan. at 281-82.

The Kansas Supreme Court's adoption of the new tort of wrongful birth was based on public policy. *OMI Holdings, Inc.*, 260 Kan. at 314. That public policy in *Arche* was exclusively based on the fact the mother could have chosen to have an abortion had she not been denied her right to make an informed decision under facts which could and should have been disclosed. 247 Kan. at 281 (citing *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 [1973]). But that public policy was nonexistent in Kansas and elsewhere before the United States Supreme Court decided *Roe* in 1973. See *Hummel v. Reiss*, 129 N.J. 118, 127, 608 A.2d 1341 (1992) (noting eugenic abortions were not lawful in cases arising before *Roe*). The new tort of wrongful birth fashioned in *Arche* in 1990 was founded on public policy that sprang into being in 1973 and did not exist in 1859 just because the tort of medical malpractice existed in 1859. The former is too dissimilar to the latter in its objective, its elements, and its underlying public policy.

Finally, in *Bruggeman v. Schimke*, 239 Kan. 245, 254, 718 P.2d 635 (1986), the Kansas Supreme Court refused to recognize a claim for wrongful life:

> "It has long been a fundamental principle of our law that human life is precious. Whether the person is in perfect health, in ill health, or has or does not have impairments or disabilities, the person's life is valuable, precious, and worthy of protection. *A legal right not to be born—to be dead, rather than to be alive with deformities—is a theory completely contradictory to our law.* We agree with the Supreme Courts of Idaho, Alabama and North Carolina, and with the Court of Appeals of New York, whose opinions we have quoted above." (Emphasis added.)

*Arche*, which created the cause of action for wrongful birth, did not overrule *Bruggeman*, which denied a cause of action for wrongful life. Life is precious and worthy

13

of protection. To claim one is entitled to damages for the birth of their child when they claim they would have aborted the fetus does not protect and value life.

We hold Section 5 only applies to those causes of action recognized in 1859. Section 5 is not implicated in this case, and the Legislature was within its power to enact K.S.A. 2013 Supp. 60-1906 because there was no right available under the common law for a wrongful birth action in 1859.

*K.S.A. 2013 Supp. 60-1906 does not implicate Section 18 of the Bill of Rights.*

Tillman and Fleetwood also contend K.S.A. 2013 Supp. 60-1906 violates Section 18 of the Bill of Rights, which states: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." Section 18 has "been found since our early caselaw to mean 'reparation for injury, ordered by a tribunal having jurisdiction, in due course of procedure and after a fair hearing.'" *Miller*, 295 Kan. at 655 (quoting *Hanson v. Krehbiel*, 68 Kan. 670, Syl. ¶ 2, 75 P. 1041 [1904]).

Again, K.S.A. 2013 Supp. 60-1906(a) states:

"No civil action may be commenced in any court for a claim of wrongful life or wrongful birth, *and no damages may be recovered in any civil action* for any physical condition of a minor that existed at the time of such minor's birth if the damages sought arise out of a claim that a person's action or omission contributed to such minor's mother not obtaining an abortion." (Emphasis added.)

Since we have determined Section 5 is not implicated by K.S.A. 2013 Supp. 60-1906, we move to analyze whether K.S.A. 2013 Supp. 60-1906 implicates Section 18 of the Bill of Rights. Tillman and Fleetwood contend "Section 18 applies to all common law causes of action, regardless of whether they existed at common law when the Kansas

14

Constitution was adopted." They contend the Kansas Supreme Court misstated the law in *Leiker v. Gafford*, 245 Kan. 325, 361, 778 P.3d 823 (1989), when it stated:

> "The apparent purpose of this argument is to avoid Kansas case law which holds that the Bill of Rights of the Kansas Constitution preserves the right to trial by jury (§ 5) and the right to remedy by due course of law (§ 18) only as to civil causes of action that were recognized as justiciable by the common law as it existed at the time our constitution was adopted. See *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 342, 757 P.2d 251 (1988); *In re Estate of Suesz*, 228 Kan. 275, 277, 613 P.2d 947 (1980); *First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, Syl. ¶ 1, 602 P.2d 1299 (1979); *In re Rome*, 218 Kan. 198, 204, 542 P.2d 676 (1975); *Craig v. Hamilton*, 213 Kan. 665, 670, 518 P.2d 539 (1974); *Kimball and others v. Connor, Starks and others*., 3 Kan. 414, 428 (1866)."

Tillman and Fleetwood incorrectly argue none of the cases *Leiker* cited analyze Section 18—*Kansas Malpractice Victims Coalition* does a Section 18 analysis—still, their overall point is correct: none of these cases held Section 18 only applies to civil causes of action recognized as justiciable by the common law in 1859. However, *Brown v. Wichita State University*, 219 Kan. 2, 10, 547 P.2d 1015 (1976), held:

> "Section 18 does not create any new rights, but merely recognizes long established systems of laws existing prior to the adoption of the constitution. Since the right to sue the state for torts was a right denied at common law, such right is not protected by Section 18. This conclusion is consistent with our view that the laws at the time the constitution was framed are relevant in interpreting our constitution. [Citations omitted.]"

Thus, while the *Leiker* court may have miscited the law, based on *Brown*, it did not misstate the law. Despite Tillman and Fleetwood's arguments to the contrary, *Lemuz* also implies Section 18 only applies to causes of actions existing at the time the Kansas Constitution was adopted. Suggesting Section 18 only applies to causes of action existing at common law when the Kansas Constitution was adopted, the *Lemuz* court held:

15

"[C]orporate negligence causes of action are not 'new' causes of action but are simply different applications of the basic concepts of negligence *which existed at common law when the Kansas Constitution was adopted. As such, corporate negligence causes of action are protected by § 18. If this were not the case, then any evolution of negligence law since the time the Kansas Constitution was adopted could be abrogated without implicating § 18.* Since K.S.A. 60-442(b) precludes a corporate negligence cause of action, it implicates § 18." 261 Kan. at 945.

Unlike in *Brown*, *Leiker*, and *Lemuz*, the Supreme Court in *Miller* did not indicate Section 18 only applied to causes of action that existed prior to the adoption of the Kansas Constitution. Despite this, *Miller* is not controlling. First, it did not overrule its holdings in *Brown*, *Leiker,* and *Lemuz.* Moreover, *Miller* does not address whether Section 18 only applies to causes of action that existed at the adoption of the Kansas Constitution; there was no dispute statutory caps on noneconomic damages implicated Section 18. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078 (2016). *Miller* does not indicate the Kansas Supreme Court is departing from its holdings in *Brown*, *Leiker*, and *Lemuz.* This court is duty bound to follow their precedent. Section 18 only applies to causes of action existing at commonlaw when the Kansas Constitution was adopted.

We are duty bound to interpret a statute as being constitutional, if possible, to maintain the Legislature's apparent intent. *Solomon*, 303 Kan. at 523. Tillman and Fleetwood have not met their burden of proof to show the Legislature's enactment of K.S.A. 2013 Supp. 60-1906 violates Section 5 and Section 18 of the Kansas Constitution Bill of Rights.

16

*Since neither Section 5 nor Section 18 is implicated by K.S.A. 2013 Supp. 60-1906, we need not apply the quid pro quo analysis reaffirmed by* Miller.

Our decision today reflects K.S.A. 2013 Supp. 60-1906 does not implicate Sections 5 or 18. Thus, the quid pro quo test from *Miller* is not implicated, and we need not address it.

Affirmed.