JOHN J. DINEEN V. JOHN OLSON.

No. 14,415.    (85 Pac. 538.)

SYLLABUS BY THE COURT.

1. FORCIBLE DETAINER—*Evidence of Title—Proof of Right to Possession.* A justice of the peace, in an action of forcible detainer, may receive evidence of title, legal or equitable, when such evidence is necessary to determine the question of the right to possession.

2. ———— *Jurisdiction of a Justice of the Peace to Try the Cause.* It was provided in a written contract that the grantor therein would convey to the grantee certain real estate, upon payment of the purchase-price as stipulated. On the part of the grantee it was agreed that he would make such payments, or, in case of failure so to do, would surrender the possession of the premises to the grantor immediately. Afterward the grantee made such default as under the conditions of the contract terminated his right of possession. The grantor then commenced an action of forcible detainer, before a justice of the peace, to recover possession of the property. In such action it appeared by the stipulations of the parties thereto that such default had occurred. The defendant did not claim, and it did not appear that he had, any legal or equitable right in the premises. *Held,* that the justice of the peace had jurisdiction to hear and determine such action.

Error from Saline district court; ROLLIN R. REES, judge. Opinion filed April 7, 1906. Affirmed.

STATEMENT.

THIS is an action of forcible detainer. It was commenced before a justice of the peace, and the plaintiff recovered judgment. The defendant appealed to the district court, where the plaintiff again recovered judgment, and the defendant brings the case here for review. The case was tried each time upon the following agreed statement of facts:

"(1) That John J. Dineen went into possession of the southeast quarter of section five (5), township sixteen (16), range five (5), Saline county, Kansas, April 14, 1900, under contract with the Union Pacific Land Company, the owner of said land. A copy of said con-

tract is attached to this agreed statement, marked 'Exhibit A,' and made a part hereof.

"(2) That at the time said Dineen went into possession he made a payment of $168, as shown by the contract above referred to, and that on April 19, 1901, he made the interest payment of $90.72, which was due on April 14, 1901; that after April 19, 1901, Dineen made no further payment of either principal or interest.

"(3) That demand was made of Dineen by the Union Pacific Land Company for the payments which fell due April 14, 1902, and April 14, 1903, but the same were never made or tendered, nor did the Union Pacific Land Company waive any of the conditions of the contract regarding payment.

"(4) That on January 21, 1904, forfeiture notice was duly served on Dineen; a copy of said notice with copy of the affidavit of service is attached to this agreed statement, marked 'Exhibit B,' and made a part hereof.

"(5) March 14, 1904, John Olson bought this land, under contract with the Union Pacific Land Company, for $2000, paying $200 down. A copy of said contract is attached to this agreed statement of facts, marked 'Exhibit C,' and made a part hereof.

"(6) Dineen refuses to deliver possession of said land to Olson, and has put in a crop on said land since the sale of the land to Olson and demand by Olson of Dineen for possession of the same.

"(7) On May 2, 1904, Olson duly served on Dineen the notice required by statute before commencing the action of forcible detention.

"(8) May 16, 1904, this action was commenced.

"(9) The amount involved is over $100, exclusive of costs.

"(10) Additional evidence not inconsistent with the foregoing agreed statement may be introduced by either party upon the trial of the case."

The contract designated as "Exhibit A," so far as necessary to the determination of this case, is as follows:

"THIS AGREEMENT, Made this 14th day of April, A. D. 1900, between the Union Pacific Land Company, as party of the first part, and J. J. Dineen, of the county of Douglass, in the state of Nebraska, the party of the second part:

Dineen v. Olson.

"WITNESSETH, That the Union Pacific Land Company, for and in consideration of the payment to it of the sum of one hundred sixty-eight ($168) dollars on the delivery hereof, the receipt whereof is hereby acknowledged, and in consideration of the covenants and agreements of the party of the second part, hereinafter written, subject, however, to the exceptions, reservations and conditions hereinafter written, has agreed to sell to said party of the second part, for the sum of sixteen hundred eighty ($1680) dollars, and upon the strict, exact and punctual performance, by the said party of the second part, of each, every and all of the covenants and agreements on his part herein written and by him to be kept and performed, and subject also to the exceptions, reservations and conditions below written, to make and deliver at the office of its land department, at Omaha, Neb., upon the surrender of this agreement by the said party of the second part, a good and sufficient deed with the ordinary covenants of warranty, conveying to said party of the second part in fee simple the following-described real estate, to wit: [Here follows description of land.]

"In consideration whereof, the said party of the second part has and does hereby covenant and agree to and with the party of the first part:

"First: To pay to it, at the office of the local treasurer of the Union Pacific Land Company, in Omaha, Neb., as the remainder of the purchase-price of said land, the gross sum of fifteen hundred twelve ($1512) dollars, with interest thereon on the several dates and in the several amounts as follow:

|  | Day | Mo. | Year | Prin. | Int. | Amt. |
|---|---|---|---|---|---|---|
| First payment, | 14th | April, | 1901 | .... | $90 72 | $90 72 |
| Second payment, | 14th | April, | 1902 | $168 | 90 72 | 258 72 |
| Third payment, | 14th | April, | 1903 | 168 | 80 64 | 248 64 |
| Fourth payment, | 14th | April, | 1904 | 168 | 70 56 | 238 56 |
| Fifth payment, | 14th | April, | 1905 | 168 | 60 48 | 228 48 |
| Sixth payment, | 14th | April, | 1906 | 168 | 50 40 | 218 40 |
| Seventh payment, | 14th | April, | 1907 | 168 | 40 32 | 208 32 |
| Eighth payment, | 14th | April, | 1908 | 168 | 30 24 | 198 24 |
| Ninth payment, | 14th | April, | 1909 | 168 | 20 76 | 188 16 |
| Tenth payment, | 14th | April, | 1910 | 168 | 10 08 | 178 08 |

"Second: To pay, at the time when by law the same become due and payable, to the proper collecting officer, all taxes and assessments (special or general) which may be lawfully levied or assessed upon or against

said lands (including any such taxes or assessments levied for or during the year 1900 or subsequent years).

"Third: That all improvements placed upon said premises shall remain thereon, and shall not—nor any part thereof—be removed or destroyed until final payment for said land; that he will punctually pay said sums of money above specified as each of the same becomes due.

"Fourth: That time and punctuality are material and essential ingredients in this contract. And in case the second party shall fail to make the payments aforesaid, and each of them, punctually and upon the strict terms and times above limited, and likewise to perform and complete all and each of the covenants and agreements aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interest hereby created, or then existing, in favor of the second party, or any one claiming under him, shall utterly cease and determine, and the right of possession, and all equitable and legal interests in the premises hereby contracted, with all the improvements and appurtenances, shall revert to, and revest in, said first party without any declaration of forfeiture or act of reentry or any other act by said first party to be performed, and without any right of second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly as if this contract had never been made. The said party of the first part shall have the right, immediately upon the failure on the part of the second party to comply with the covenants and agreements herein written, or any part thereof, to enter upon the land aforesaid, and take immediate possession thereof without process of law, together with the improvements and appurtenances thereunto belonging. And the said party of the second part covenants and agrees that he will surrender unto the said party of the first part the said land, improvements, and appurtenances, without delay or hindrance, and no court shall relieve the party of the second part upon failure to comply strictly and literally with this contract.

"Fifth: That no assignment of this contract, or of the premises herein described, shall be valid unless the same be made with the written consent of the party of

Dineen v. Olson.

the first part, and such consent and assignment be indorsed hereon, and that no agreements or conditions, or relations between the party of the second part and his assignee, or any other person acquiring title or interest from or through them or either of them, shall preclude the party of the first part from the right to convey the premises to the party of the second part, or his assigns, on the surrender of this agreement, and the payment of the unpaid portion of the purchase-money which may be due to the party of the first part.

"And it is further expressly agreed that any consent which may be given to the assignment of this contract, or recognition thereof by the party of the first part, shall not exempt the original purchaser from any of his liabilities under this contract, but the same shall thereafter continue in full force.

"And it is further covenanted and agreed that if said second party shall make default in the payment of principal, interest, or taxes, or shall make default in the performance of any of the covenants and agreements on his part herein specified, the said party of the second part shall then be deemed to have been from the beginning the tenant of the party of the first part, and the tenancy of said second party shall, upon the default in the performance of any of the covenants and agreements by him herein agreed to be kept and performed, cease and determine, without any notice by the party of the first part of the termination of said tenancy; and the said party of the second part hereby waives any notice of the termination of said tenancy, and agrees immediately upon such default as aforesaid to quit said premises and deliver possession of the same to said party of the first part, and that thereupon said party of the first part may treat the said party of the second part as a tenant holding over and at sufferance and may at once proceed against said second party by summary action of forcible detainer to recover possession of said premises.

"It is further mutually agreed and understood that in case of such default all payments of principal, interest and taxes and all improvements made upon said lands by the party of the second part shall be deemed and held to have been payments of rent for the use and occupation of said property during the occupancy thereof by said party of the second part as aforesaid, and that the said party of the second part shall not have relief in any court of law or equity in respect to

any payments made under this contract or any improvements made upon said lands."

The contract to Olson was the same as the one to Dineen, except that he was to pay $1800, in annual payments of $200, and interest. The notice designated as "Exhibit B" reads:

"THE UNION PACIFIC LAND COMPANY,
       OMAHA, NEB., November 28, 1903.
*"To J. J. Dineen, Brookville, Kan.:*

"The property hereinafter described having been sold by the Union Pacific Land Company under contract, now standing on the records of said company in the name of J. J. Dineen, to wit: Southeast quarter of section five (5), township sixteen (16) south, of range five (5) west, of the state of Kansas, contract numbered 908 'E,' April 14, 1900, you are hereby notified that default has been made by the holder of said contract, in the payment of the deferred instalments heretofore due and payable under the terms of said contract, and that he has likewise failed to perform and complete all and each of the covenants and agreements on his part to be kept and performed as in said contract specified, and that because of such default and failure to keep and perform the said covenants and agreements the said contract has become null and void, in accordance with the provisions therein contained, and all rights and interest thereby created or existing in favor of the said purchaser or any one claiming under him have utterly ceased and determined.

"You are further notified that the Union Pacific Land Company has elected to, and does hereby, declare said contract forfeited and canceled.

       THE UNION PACIFIC LAND COMPANY.
           By B. A. McALLASTER, *General Manager."*

*David Ritchie,* and *C. M. Holmquist,* for plaintiff in error.

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The plaintiff in error insists that his contract with the railroad company is not a lease, but a contract for the purchase of real estate, and that

therefore the justice of the peace before whom the action was commenced did not have jurisdiction of the subject-matter involved therein. The claim in this respect is clearly and tersely stated in his brief, as follows:

"As to whether the above and foregoing contract is a contract of purchase or a contract of lease depends, as we believe, the correctness or incorrectness of the ruling of the district court in this case. It seems to us that it is clearly a contract of purchase, and not a contract of lease; and it cannot be both. It must be one or the other."

We do not deem it necessary to give this paper a name. Its provisions state the rights and duties of the parties thereunder, and present the only questions to be considered. Justice will probably be better subserved by treating this exhibit as an ordinary written contract, containing the stipulations and agreements of the parties thereto, than by attempting to assign it to a place in the technical classification of legal instruments by determining which of them it most resembles. The parties refer to this paper in their briefs as a contract, and for convenience it will be so designated here.

It is conceded that whatever right plaintiff in error may have to the possession of the land in controversy is derived from this contract. By the covenants of such contract he agreed that in case of failure on his part to comply with its provisions his right to the possession of the premises should cease at once, and all payments which had been made by him should be retained as rent for the prior use of the property. The agreed statement of facts shows that he failed to comply with his agreements in the contract on April 14, 1902, by refusing to make the payment then due. He has ever since remained in default. On January 21, 1904, he was notified that the contract was at an end. No payment or offer to pay has been made since April 14, 1901.

This action was commenced May 16, 1904. The ag-

25—73 KAN.

gregate amount paid by Dineen is $258.72. He had been in possession two years at the time of default. When this action was commenced he had been in possession more than four years. The aggregate amount paid, from the time he went into possession to the date of default, if applied as rent, would be less than eighty cents an acre annually, and, for the whole period of occupancy prior to the commencement of this action, less than forty cents an acre annually. It is not claimed that an injustice will be done to Dineen by compelling him to surrender possession of the land, nor that he has any meritorious defense to a proper action brought for that purpose. It is simply insisted that he has a legal right to stay there until ousted according to the strict letter of the law.

It may be conceded that an action of forcible detainer is strictly possessory in its character, that the plaintiff must have a perfect right to possession at the time the notice to quit is given, and that when such an action is pending before a justice of the peace—a court without equitable jurisdiction or power—it must be determined as an action at law. (*Kellogg v. Lewis,* 28 Kan. 535; *Gilmore v. Asbury,* 64 Kan. 383, 67 Pac. 864.) But for the purpose of determining the right of possession, questions of title, legal or equitable, may be incidentally considered. (*Conaway v. Gore,* 27 Kan. 122; *McClain v. Jones,* 60 Kan. 639, 57 Pac. 500.) In the case of *Conaway v. Gore, supra,* which was an action of this nature, Mr. Justice Brewer, who delivered the opinion of the court, used the following language:

"It is true, as the court charged the jury, that questions of title are not to be litigated in actions of this nature. The question is simply one of the unlawful and forcible disturbance or withholding of possession; and yet, as we shall see hereafter, evidences of title are often properly received in evidence, and questions of title may often be considered and have an important bearing upon the final decision. Indeed, cases may arise under our statute where the plaintiff may rest his entire right of recovery upon mere proof of title." (Page 126.)

Dineen v. Olson.

The plaintiff may always recover in an action of forcible detainer if he is entitled to possession and the defendant has no legal or equitable interest in the land. In the case of *Douglas v. Anderson,* 28 Kan. 262, it was held that, where a tenant stipulated in a lease that upon failure to pay rent the lessor might enter and take possession, upon default the landlord might recover possession by an action of forcible detainer.

The provisions of the contract between Dineen and the railroad company contain the measure and limit of the rights acquired by him to the land therein described. By the terms of the contract he expressly agreed to quit the premises and deliver back the possession thereof in case of default by him in the performance of any of his agreements. It is admitted that he made default, and no cause or excuse is offered therefor. We can see no reason why he should not be held to this agreement. Upon the agreed facts he has no right, legal or equitable, remaining in the land, and does not claim to have. His right to possession has ended by reason of the breach of his own deliberate contract. The question whether a justice of the peace has equitable jurisdiction is immaterial, as nothing of an equitable nature is presented here to challenge such jurisdiction.

The court was clearly right in holding that under the admitted facts the right of Dineen to remain in possession was at an end. If outside of the question of possession he has rights concerning crops, improvements, or of any other nature, they can be adjusted in any appropriate proceeding without embarrassment on account of this judgment, as it is not a bar to any after-action brought by either party. (Gen. Stat. 1901, § 5396; *Waite v. Teeters,* 36 Kan. 604, 14 Pac. 146.) The judgment of the district court is affirmed.

All the Justices concurring.