No. 29,268.

THE ATCHISON SAVINGS BANK, *Appellee*, v. RALPH W. RICHARDS. et al., *Appellants.*

(289 Pac. 975.)

Opinion filed July 5, 1930.

*Ralph U. Pfouts,* of Atchison, for the appellants.
*Hugo Orlopp,* of Atchison, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to forfeit and cancel an option sale contract and restore possession to the assignee of the vendor for failure of defendants to continue to make prompt payments as required by the terms of the contract.

The answer, in addition to a general denial, pleaded waiver of right to forfeit under the contract, failure to give reasonable notice of intention to forfeit, protection against forfeiture on account of having made lasting and valuable improvements, that forfeiture

under the contract is grossly inequitable, and that any remedy plaintiff may have is in the nature of a foreclosure proceeding and defendants are entitled to eighteen months' equity of redemption.

The case was tried to the court without a jury and judgment was rendered in favor of plaintiff, from which defendants appeal.

The option contract was made February 1, 1921, between defendants and one Filholm, the owner of a lot in Atchison, under which contract the defendants went into possession of the lot, with dwelling thereon, and were given the option of purchasing the property for $3,000, of which $150 was paid in cash, and the balance and interest thereon at six per cent per annum was to be paid in installments of $25 and interest on delinquency on the first of every month. They were also to pay the taxes and insurance and to keep the improvements in repair. Time was made the essence of the contract, and second parties were under no legal obligation to pay anything; it was absolutely at their option; but if any of such payments, interest, taxes or insurance was not paid promptly when due then all of the deferred payments and interest should at once become due and payable, and if not paid immediately on demand, then parties of second part agreed without further notice of any kind to surrender possession and make no claim for return of payments or for improvements made by them on the property.

Defendants made payments more or less promptly until January, 1927, and have made none since. At the time this action was commenced they had paid, exclusive of taxes and insurance, the total sum of about $1,900, and there remained due on the purchase price, including interest, approximately $1,900. Taxes for one and a half years and monthly installments for about sixteen months had not been paid, but defendant had built a double garage on the lot, costing about $600, and had made other valuable improvements. Notice of intention to forfeit the contract unless the entire sum of $1,900 was paid in ten days was served on the 5th of May, 1928, and this action was brought after the expiration of the ten-day period.

On March 19, 1928, the vendor in the contract conveyed the lot in question and assigned the option contract to the plaintiff savings bank, which bank already had taken an assignment of the contract by the defendants as security for a loan, but this latter fact we may disregard for the present.

Appellants insist that the doctrine of waiver prevents the appellee from exercising its right of forfeiture, if it ever had such right, for

by accepting monthly installments when long past due it waived its right to demand a forfeiture on account of delinquency, citing as authority the cases of *National Land Co. v. Perry*, 23 Kan. 140, and *Avery v. Railroad Co.*, 73 Kan. 563, 85 Pac. 598. There was an element in each of these cases which is lacking in the case at bar, viz., the tender either before action or in court of the full amount of installments or delinquent payments due. The most that a mere indulgence in accepting past-due payments can accomplish is to require the giving of a notice of intention to adhere strictly to the requirements of the contract in the future or intention to forfeit it. The element of estoppel also must enter into the case.

"The granting of an extension giving a purchaser the opportunity to pay the balance due on the land on a future specified date cannot be regarded as a waiver of the right to insist on a forfeiture stipulation if payment is not made at that time. It is a general rule that no mere indulgences or silent acquiescence can be construed as a waiver of the right unless some element of estoppel is involved in the transaction." (*Long v. Clark*, 90 Kan. 535, syl. ¶ 2, 135 Pac. 673. See, also, *Kliesen v. Mercantile Association*, 101 Kan. 138, 165 Pac. 650.)

"Although time is of the essence of the contract, waiver of default in payment as to one or more installments does not operate as a waiver of the right to insist on payment of subsequent installments as provided in the contract or prevent the vendor from rescinding or declaring a forfeiture for failure to do so." (39 Cyc. 1395.)

"The vendor of land sold under contract giving the vendor option to forfeit for failure to make payments promptly, who waives defaults and accepts overdue payments may not afterwards exercise his privileges without notifying the vendee of intention to forfeit and allowing reasonable time for performance." (*Luther v. Hekking*, 110 Kan. 478, syl., 204 Pac. 523.)

In the opinion it was said:

"This acceptance did not, *ipso facto*, effect permanent waiver of the forfeiture privilege, but it placed the parties in such a situation that forfeiture could not be declared without previous notice that the privilege would be insisted on. What the vendors should have done on May 12 was to serve on the vendees notice that unless defaults were made good within a stated reasonable time the contract would be declared forfeited." (p. 479.)

Appellants claim that the pretended notice of forfeiture that was given to defendants was more nearly a cancellation of contract, and not in fact a notice at all, because it demanded payment within ten days of the entire balance of the purchase price with interest, whereas it should have required only the payment of the installments in default, or at most the necessary amount to reduce the indebtedness to $1,200, and the plaintiff should have offered to take a note for that

amount secured by mortgage on the property as provided by the contract.

A reference to the contract shows that all of the deferred payments were to become due and payable when default was made in any of the payments at the time specified, and that time was of the essence of the contract. Had no such provisions been agreed to by the appellants the argument would have been sound. But when they agreed that the whole sum should become due upon such delinquency they cannot now complain of losing some of the privileges of the contract which they could have retained if the default had not occurred.

The contract further provided that no notice of forfeiture would be required, but a ten days' notice was served. It is further urged that ten days was not a reasonable time. The case of *Luther v. Hekking,* supra, is cited in support of this contention. In that case the notice given allowed no time whatever for compliance. It simply declared the intention of the vendor, and the court held a notice should have been served giving a reasonable time to make good the payments due. These defendants had remained in possession of the dwelling and had paid neither installments, interest nor taxes for about sixteen months, and certainly had no reason to think such a situation could continue indefinitely, and would naturally be looking for an ultimatum at any time. In the case of *Drollinger v. Carson,* 97 Kan. 502, 155 Pac. 923, quite similar to this case and cited by both parties, the notice given allowed the defendants nine days to make the payments then in default. Ejectment was brought and the notice was held to be sufficient. In the case of *Heard v. Gephart,* 118 Kan. 82, 233 Pac. 1044, cited by both parties, a ten days' notice was given, and it was held to be sufficient.

The appellants claim the benefit of the equity of redemption as in a mortgage-foreclosure proceeding, but it has frequently been held in this court that cases of this kind are not foreclosure proceedings, and the statutes relating to foreclosure sale and redemption have no bearing on the transaction.

"Where a contract is executed for the sale of real property upon terms of a relatively small down payment by the purchaser who also agreed to pay monthly installments of principal and interest and to pay the taxes on the property and to keep the premises insured against fire and tornado and where the parties also agreed that if the purchaser defaulted in his payments of installments, insurance or taxes the contract should be terminated and that whatever monthly payments were made should be considered as rent and liquidated

damages, and that the interest of the purchaser should be canceled and that the vendor should have the right of reëntry and possession, it is *held,* that in view of the facts noted in the opinion the contract terms were not inequitable so as to justify·the trial court in refusing to enforce it; and *held,* also, that the statute regulating the foreclosure, sale and redemption of mortgaged property had no bearing on the transaction." (*Heard v. Gephart,* supra, syl.)

The decision just quoted reaches another claim urged by the defendants in the same connection, that the contract is inequitable because of the payments made and the lasting and valuable improvements placed on the lot. In the case last cited, the facts were very similar to those in this case. Here they have paid, aside from taxes and insurance, about $1,900 and still owe about the same amount, counting interest on a $3,000 purchase price. They have· occupied the premises from February, 1921, to June, 1929, the reasonable rental value of which was about $25 per month. They built a garage costing $600 and presumably had the use of it much of this time. They made improvements, as roofing, painting, and planting trees. They made these improvements with full knowledge that they were not to claim anything for improvements if they failed to make the payments promptly. This situation does not appeal to us as being inequitable.

"One who occupies land under a contract providing that he shall have title upon completing the purchase price, but must give up the property if he makes default, has no absolute right with respect to improvements he may make. His agreement gives him none, and the occupying-claimant act (Civ. Code, § 622) does not apply, for he is not within its letter or spirit. (16 A. & E. Encyl. of L. 96.) The ordinary rule is that he is allowed no compensation for his betterments, although there are cases to the contrary. (16 A. & E. Encyl. of L. 97; 39 Cyc. 1401.) Whatever concession is made to him in this regard must result from circumstances rendering it inequitable that he should lose his entire investment—a matter to be determined upon the facts of each particular case. The trial court evidently concluded that inasmuch as the defendants had had the use of the property during the period of more than five years that, the contract had been in force, equity did not require any allowance to them on account of what they had invested in permanent improvements. In this conclusion we concur." (*Drollinger v. Carson,* 97 Kan. 502, 506, 155 Pac. 923. See, also, *Osterhout v. Brandts,* 114 Kan. 537, 220 Pac. 171.)

We conclude that the plaintiff had not waived the right to forfeit the contract; that a reasonable notice of intention to forfeit the contract was given; that the action is not a foreclosure and the statute allowing an equity of redemption does not apply, and that the contract and forfeiture thereunder is under the circumstances not inequitable.

Reference has already been made to the fact that defendants had assigned this contract to the plaintiff bank as security for a loan before it took the assignment of the same contract and a deed from the vendor. The petition contained a second count referring to this transaction and asked to foreclose the lien. The answer pleaded homestead and release of the obligation and lien by discharge in bankruptcy. These issues were tried out, but before judgment was rendered plaintiff, with the consent of the court, withdrew its second count. This second count, being a foreclosure action, properly involved the equity of redemption. Notwithstanding we sustain the ruling of the trial court in every particular, yet because of the confusion occasioned by the trial of the foreclosure issues, later withdrawn, we think it would be equitable to allow the defendants ninety days from this date to pay the entire balance under the contract to obtain a deed to the lot in question, if they so desire. (*Quinton v. Adams,* 87 Kan. 112, 123 Pac. 740; *Loomis v. Supply Co.,* 99 Kan. 279, 161 Pac. 627; *Insurance Co. v. Stegink,* 106 Kan. 730, 189 Pac. 965; *Seal v. Scott,* 128 Kan. 766, 280 Pac. 778.) On our own motion, it is so ordered.

With this modification, the judgment is affirmed.

JOCHEMS, J., not participating.

HARVEY, J. (concurring specially): I concur in the final conclusion of the opinion reached by this court on its own motion, but in my judgment the trial court should have exercised the same equitable considerations. Whatever the wording of this contract was, its essential elements constituted a contract of sale of real property. Plaintiff went into a court of equity to have it declared forfeited. There is no reason why the trial court should not have considered the equitable principles developed by the pleadings and the evidence; and especially in view of the fact that such equitable principles appear so clearly, this court feels compelled on its own motion to apply them.