(603 P.2d 628)

No. 50,331

OTTO J. KOERNER, *Appellee,* v. CUSTOM COMPONENTS, INC., ELMER WIECHMAN and TERRY WIECHMAN, *Appellants.*

Opinion filed November 30, 1979.

*Mark F. Anderson,* of Kidwell & Williamson, Chartered, of Wichita, for appellants.

*Jerry G. Elliott* and *Nicholas S. Daily,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellee.

Before REES, P.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: This case involves an action for peaceable entry and forcible detainer brought by the plaintiff, Otto J. Koerner, pursuant to K.S.A. 61-2301 *et seq.,* to evict the defendants from commercial premises in Valley Center, Kansas, and to recover accrued but unpaid rent for the use of those premises. The trial court granted plaintiff possession and a judgment in the amount of $8,955 for past due rent. Defendants appeal.

The defendants are Custom Components, Inc., Elmer Wiechman and Terry Wiechman. Elmer and Terry are father and son. They are the officers and sole stockholders of Custom Components, Inc. The written leases hereinafter referred to were signed by the Wiechmans both in their corporate capacity and individually.

Otto J. Koerner, a Wichita lawyer, had been counsel for the Wiechmans for many years and for Custom Components, Inc., since it was formed in 1973. Custom Components manufactures roof and floor trusses and various other components used in the building trade. In July of 1974 the defendants were having financial problems and lost possession of the building in which they manufactured their products. Koerner's aid was obtained in an effort to secure new quarters. The record indicates that considerable effort was made to locate suitable existing quarters, but when that effort was unsuccessful the parties decided to build. Two and a half acres of land located in Valley Center were purchased and an option was taken to purchase an additional seven and a half acres. The Wiechmans, due to their financial condition, were unable to obtain financing. An attempt was made to issue industrial revenue bonds but the bond companies advised that the bonds would not sell because of the Wiechmans' financial condition. They finally decided that Koerner's credit would be used to build a building.

Defendants executed an agreement with Koerner on July 18, 1974. The agreement provided that Koerner would purchase the two-and-a-half-acre tract and that defendants would then provide the labor to erect a building thereon for use as a manufacturing facility. The agreement further provided that Koerner would advance sums to defendants for site preparation and materials to be used in erecting a building. The same day, the parties entered into a lease agreement covering the same property. The lease was for a ten-year term, with rent at $500 a month. A separate provision of this contract provided that Koerner was to provide legal, financial and managerial advice in return for one percent of the defendants' gross business. Koerner made arrangements for long-term financing of $60,000 and for interim financing in the same amount, and ultimately the building was constructed.

Defendants made no rent payments nor payments on the retainer portion of the contract. After the permanent loan was made and the parties knew what the cost of servicing the loan would be, the parties entered into a new agreement, effective July 1, 1975, in which Koerner waived all past due amounts owing and the rent was raised from $500 to $810 a month, an amount corresponding to Koerner's new mortgage payments on the property. In other respects the agreement was similar to the previous one, requiring defendants to pay the taxes and the insurance premiums.

Defendants' payments under this second agreement were irregular from the start. In July of 1976 they quit making payments on the retainer portion of the contract. (Koerner makes no claim in this lawsuit for money due under the retainer provision.) In the summer of 1976, Koerner gave defendants notice of default and defendants responded by bringing their payments current by December 7, 1976. By November of 1977, defendants were $4,860 behind on their rent. Koerner sent them a second notice of default on November 28, 1977. A corrected notice of default was sent on December 1, 1977. It provided that the lease would be terminated if defendants did not become current within forty days.

Defendants contend that thereafter a meeting of the parties occurred at Koerner's office. They testified that an agreement was reached at that meeting between the parties wherein defendants would make double monthly payments for the months of January, February and March 1977, at which time defendants would be current. Koerner denies such an agreement, as did a second

lawyer who was representing Koerner and was present during part of the meeting. On January 3, 1978, defendants paid $1,620, but they were still in arrears. A notice of termination was served on defendants on January 16, 1978. Defendants were notified on January 31, 1978, that if they remained in possession it would be on a month-to-month basis and rent would be $2,000 a month, a sum Koerner testified he felt was the reasonable rental value. On May 26, 1978, after having received no rent payments since January, Koerner served notice to quit and notice of suit on defendants. This lawsuit was filed June 19, 1978.

Defendants have admitted Koerner has legal title to the property and that they received the notices. Defendants further admit they were behind on rent at the time default was declared and that they have remained in possession without making any attempt since January 1978 to pay rent.

The case was tried to the court. At the conclusion of trial the court ruled that there existed a valid lease which was breached by defendants; that defendants owed rent in the amount of $8,955 (evidently computed by adding the $2,430, which the court found unpaid at the time Koerner attempted to raise the rent, to the sum of five months' accrued rent, which the court concluded had a reasonable monthly value of $1,305 per month); and that defendants be evicted from the premises. Defendants posted a supersedeas bond in the penal sum of $17,910 and have remained in possession of the premises pending appeal. Further facts will be set forth as they become relevant.

Defendants do not allege fraud, and they stated at oral argument that they neither allege nor rely on violation of the Code of Professional Responsibility. They raise the following issues:

1. Did the trial court err in construing the proffered testimony of O. J. Baalman?

2. Did the trial court err in construing the June 9, 1975, agreement as a lease?

3. Is the plaintiff estopped from proceeding in this action because the June 9, 1975, agreement is one of conditional sale rather than lease?

4. Did the trial court err in overruling defendants' demand for jury trial?

O. J. Baalman is a management and marketing consultant for small corporate entities and was employed in that capacity by

defendants to help solve their financial difficulties. He began performing services for the corporation in the summer or early fall of 1977, almost a full year after the defendants quit paying Koerner for legal and managerial services.

The trial judge ruled that Baalman's testimony pertaining to his acts subsequent to Koerner's participation in the management of the corporation was irrelevant and inadmissible. Defendants' counsel then made a proffer that their purpose in calling Baalman was to establish that plaintiff's faulty management contributed to their inability to pay the rent and carry out the provisions of the lease, thereby creating an estoppel defense to the eviction proceeding.

Koerner made no claim for defendants' deficiency on the employment contract which provided for one percent of monthly gross receipts. When his counsel endeavored at trial to question one of the defendants concerning the fees due under the employment contract, defendants' attorney objected that any discussion of the employment contract was irrelevant because the proceedings entailed only the issues of possession of the building and rent. In response, the trial judge stated that he would not take into consideration testimony concerning the accrued fees provided for in the management contract. Despite objection made by defendants to the trial judge, urging him to limit the testimony concerning the employment contract, they attempted to introduce evidence that Koerner failed to provide financial and managerial advice under the employment contract that purportedly might have improved the corporation's financial standing and allowed it to pay the rent. Admission of this testimony was refused on the basis of relevance. "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review." *Grimm v. Pallesen,* 215 Kan. 660, Syl. ¶ 3, 527 P.2d 978 (1974). That is exactly what the defendants have done in this case by requesting a limited scope of examination in the area of the employment contract and then charging as error an evidentiary exclusion in the same area.

Moreover, a ruling on the remoteness of the relevancy of evidence ordinarily rests in the discretion of the trial court and will not be reversed unless it clearly appears the ruling constituted an abuse of sound judicial discretion. *Holmquist v. D-V,*

*Inc.,* 1 Kan. App. 2d 291, Syl. ¶ 2, 563 P.2d 1112 (1977). This Court recently reviewed the rules for establishing an abuse of judicial discretion in *McColm v. Stegman,* 3 Kan. App. 2d 416, 420, 596 P.2d 167 (1979):

"Appellants have a heavy burden, for one who claims abuse of discretion has the burden of proving that contention. *Krueger v. Krueger,* 174 Kan. 249, 255 P.2d 621 (1953). To find the trial court abused its discretion, an appellate court must determine that no reasonable person could take the view adopted by the trial court. *In re Pennington,* 224 Kan. 573, 577, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979). If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Stayton v. Stayton,* 211 Kan. 560, 506 P.2d 1172 (1973)."

When viewed in light of defendants' own question on the relevancy of testimony in the area of the employment contract, it is clear that defendants have not sustained their burden of showing that no reasonable person could take the view adopted by the trial court.

Defendants also argue that the June 9, 1975, contractual arrangement which they entered into with Koerner amounted to a conditional sale contract rather than a lease with an option to purchase, thereby vesting defendants with an interest in the land which could not be extinguished by the statutory summary possession remedy. In support of this position, defendants cite *Stevens v. McDowell,* 151 Kan. 316, 98 P.2d 410 (1940), at 319:

"But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial improvements have been made by the tenant-vendee, then equity may not permit the interest of the tenant-vendee to be summarily extinguished in forcible detainer, but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished."

Koerner counters by arguing that the agreement was, in fact, a lease, but even if it should be interpreted now as a contract for the purchase of land, the interest was still properly extinguished by forcible detainer.

The trial judge, after examining the document and listening to testimony concerning the parties' intent and actions in relation to the agreement, found the contract to be a lease with an option to buy. When a case is tried to the court and the evidence is heard orally, the district court's findings in the case have the force and

effect of a jury's verdict, and if supported by substantial evidence the findings will not be disturbed on appellate review. *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 259, 531 P.2d 428 (1975). The evidence supports the trial court's findings that the contractual agreement in question is a lease with an option to buy (also called a "pure-option," *Letzig v. Rupert, Executor,* 209 Kan. 143, 147, 495 P.2d 955 [1972]) and not a contract for sale of the "optional-agreement flat-payment" variety as discussed in *Stevens v. McDowell,* 151 Kan. 316, and upon which defendants heavily rely. In *Fourth National Bank v. Hill,* 181 Kan. 683, 693-94, 314 P.2d 312 (1957), the Kansas Supreme Court found that the lessee in a lease with an option to purchase had no interest in the property beyond his leasehold interest. The factors considered by the Court in its finding were that (1) the lessee was never obligated to purchase the property; (2) there was no completed contract of sale on which the lessor could have sought and obtained specific performance against the lessee; (3) all payments made by the lessee were paid as rent, not as purchase money; (4) the option was never exercised. In the case before the Court, the facts are the same. The defendants were under no obligation to buy the property and did not interpret the contractual agreement as requiring them to do so; in fact, at one point, months after the contract had gone into effect, the defendants considered the possibility of buying the property. Defendants met with Koerner after they fell behind on their rent and they testified *they* suggested that one way they might resolve their differences was to "buy" the property. The parties agreed to hire an appraiser so that a fair price could be ascertained.

The evidence also supports the trial court's finding that both parties *intended* the agreement to be a lease. A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention if it can be done consistently with legal principles. *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 363, 552 P.2d 917 (1976); *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, Syl. ¶ 1, 519 P.2d 646 (1974).

The terms of the June 9 contract clearly indicate that the parties regarded the transaction as a lease with an option to purchase, not as a sale:

1. The June 9, 1975, contract provisions speak of its being a ten-year lease for which *rent* is due in monthly installments;

2. Title was neither placed in escrow nor transferred to defendants;

3. Defendants made no down payment;

4. The contract provided that any building erected would be the property of the lessor, and the lessee should have only a *leasehold* interest therein;

5. The contract provided in the event the premises were appropriated by eminent domain, the contract would be terminated and the lessor would have the *exclusive* right to make claim against the condemning authority for any damage done;

6. The contract provided that upon default or abandonment by the tenant, the lessor could enter and relet for the remainder of the term;

7. Section 19 of the contract provided that the tenant would allow the lessor at any time within the last one-half year prior to the expiration of the agreement to place on the demised premises any usual or ordinary "to let" or "to lease" signs and exhibit the premises to prospective tenants at reasonable hours;

8. The contract provided that the tenant had the right to renew for another ten-year term on the same terms and conditions, except that the *rental* payments would be renegotiated.

We further note that even when our Supreme Court has considered an agreement as a conditional sale contract, it has affirmed trial courts that strictly enforced the contract according to its terms. *Hively v. Graff*, 151 Kan. 594, 100 P.2d 685 (1940); *Coryell v. Hardy*, 144 Kan. 194, 58 P.2d 1151 (1936); *Atchison Savings Bank v. Richards*, 131 Kan. 81, 289 Pac. 975 (1930). In *Atchison Savings Bank*, the defendants argued they had made substantial improvements, as do the defendants in the case at bar, and that the plaintiff by accepting late payments had waived the right to declare forfeiture. The Court rejected both contentions. It reasoned that it was not inequitable to declare forfeiture since the defendants had made improvements with the full knowledge that under the contract such improvements would be forfeited if the installments were not paid promptly when due. Since the contract provided that time was of the essence, the late acceptance of payments did not waive a breach.

Here, defendants contend the value of their labor in erecting a building on the property gives them an equitable interest. The

rent payments of $810 per month covered only the cost of servicing the loan. The trial court found that the reasonable monthly rental value of the premises was $1,350, which also included payment of insurance and taxes. When the evidence is considered in a light most favorable to the prevailing party, as we are required to do, there is testimony that the property has a fair market value as low as $80,000. As noted by counsel for Koerner, that figure would not keep up with the rate of inflation on Koerner's $60,000. Based on the record before us, we cannot say the trial court erred in finding the defendants had no equitable interest in the property and declaring forfeiture.

The defendants claim reversible error by reason of the trial judge's refusal to grant their request for a jury trial. They argue that they are entitled to a jury trial by express statutory provisions by virtue of Kansas Bill of Rights § 5. The express statutory provisions on which defendants rely are K.S.A. 1977 Supp. 61-1716(*a*), which reads in pertinent part, "All civil actions brought to trial pursuant to this chapter shall be tried by the court, *unless a trial by jury is demanded by one of the parties*," and that portion of K.S.A. 61-2309 reading, "If the suit be not continued or place of trial changed *or neither party demands a jury trial,* the judge shall try the case at the time appointed for trial." (Emphasis supplied.)

We dispose first of defendants' contention that a jury trial is mandatory under K.S.A. 61-2309 if either party demands it pursuant to K.S.A. 1977 Supp. 61-1716(*a*), regardless of whether the action is legal or equitable. Koerner seems to concede that historically in Kansas a jury trial generally has been provided for in forcible entry and detainer statutes. He argues that the question is whether a jury trial is required in all forcible entry and detainer cases in which a party has requested one *regardless of the nature of the case.*

Plaintiff contends, and we agree, that the reference to a jury trial in K.S.A. 61-2309 is mechanical and not mandatory. It provides no independent substantive guarantee of a jury trial, rather it is a mechanical provision concerning the timing of the trial in cases when there is no delay because of a continuance, a change of venue, or the mechanics of calling a jury. The language mentioning a jury merely recognizes that in some cases a jury may be appropriate; it does not *require* a jury in *all* instances.

Neither does K.S.A. 1977 Supp. 61-1716(*a*) require a jury trial. In our opinion, it parallels the provisions of K.S.A. 60-238 and 60-239, but is in somewhat more abbreviated language. The Kansas Supreme Court has repeatedly held that the provisions of 60-238 and 60-239 merely implement the constitutional guarantee contained in Kansas Bill of Rights § 5. *Hindman v. Shepard,* 205 Kan. 207, 468 P.2d 103 (1970), *cert. denied* 401 U.S. 928 (1971). The construction suggested by defendants would require jury trials on request in other chapter 61 proceedings such as attachment, garnishment, replevin and actions to foreclose security interests. We are satisfied the legislature did not intend such a result. In *Windholz v. Willis,* 1 Kan. App. 2d 683, 573 P.2d 1100 (1977), this Court considered K.S.A. 61-1716 in determining whether a party in an action brought under the small claims act (K.S.A. 61-2701 *et seq.*) was entitled to a jury trial. We stated that the test used to determine if a civil litigant is entitled to a jury trial is whether the action is *essentially* a legal rather than an equitable one. We conclude that 61-1716(*a*) cannot be read to permit a party to receive a jury trial upon request if the action is *essentially equitable* in nature.

We are of the opinion that *Windholz v. Willis* further buttresses Koerner's argument that the language in K.S.A. 61-2309 is mechanical and not mandatory. When the statutory language in 61-2309, that if "neither party demands a jury trial, the judge shall try the case," is compared to the statutory language in 61-1716 considered in *Windholz,* that the action "shall be tried by the court, unless a trial by jury is demanded by one of the parties," it is virtually identical. We are thus satisfied that the statutes do not provide the right to a jury trial independent of constitutional dictates.

We turn now to whether defendants are entitled to a trial by jury by virtue of Kansas Bill of Rights § 5. Our Supreme Court reviewed some of the guiding principles to be followed in determining a civil litigant's entitlement to trial by jury in *Karnes Enterprises, Inc. v. Quan,* 221 Kan. 596, 600-01, 561 P.2d 825 (1977), as follows:

"(1) The right of trial by jury is a substantial and valuable right. The law favors trial by jury and the right should be carefully guarded against infringement. (*Bourne v. Atchison, T. & S. F. Rly. Co.,* 209 Kan. 511, 497 P.2d 110.)

"(2) The constitutional right to a jury trial guaranteed by Section 5 of the Bill of Rights of the Constitution of the State of Kansas refers to that right as it existed at

common law. (*Craig v. Hamilton,* 213 Kan. 665, 518 P.2d 539; *Hasty v. Pierpont,* 146 Kan. 517, 72 P.2d 69.) Judge Spencer A. Gard in Kansas Code of Civil Procedure § 60-238, in discussing the repeal of former statute G.S. 1949, 60-2903 and in analyzing K.S.A. 60-238 states as follows:

" 'There is now no general statute defining what issues are triable to a jury as a matter of right and which are not. That question is determinable on the basis of common law tradition as preserved by the Kansas Constitution, section 5 of the Bill of Rights. See Hasty v. Pierpont, 146 K 517, 72 P. 2d 69, which discusses the basic principle that under the common law a party was entitled to a jury if the case was based on legal principles as distinguished from actions in equity. Kansas jurisprudence does not seem to have suffered any loss by the repeal of former section 60-2903.'

"(3) At common law and under the Kansas constitutional provision in a suit in equity a party is not entitled to a trial by jury as a matter of right. (*Spena v. Goffe,* 119 Kan. 831, 241 Pac. 257.)

"(4) In determining whether an action is one in equity the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought. (*Akins v. Holmes,* 89 Kan. 812, 133 Pac. 849; *Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271; *Hasty v. Pierpont,* supra; *Sutherland v. Sutherland,* 187 Kan. 599, 358 P.2d 776; *Hindman v. Shepard,* 205 Kan. 207, 468 P.2d 103.)

"(5) The issues raised by the pleadings or as modified by the pretrial order determine the nature of the action, and where the issue is not one justiciable at common law, a jury trial is not available. (*Craig v. Hamilton,* supra.)

"Prior to the adoption of our present code of civil procedure whether or not a party was entitled to a jury trial was determined exclusively from the pleadings. (*Estey v. Holdren,* 126 Kan. 385, 267 Pac. 1098; *Hasty v. Pierpont,* supra; *McCalester v. National Reserve Life Ins. Co.,* 151 Kan. 378, 99 P.2d 758; *Nusz v. Nusz,* 155 Kan. 699, 127 P.2d 441; *City of Osawatomie v. Slayman,* 182 Kan. 770, 323 P.2d 910; *Sutherland v. Sutherland,* supra.) The rule which required a consideration of the pleadings alone was appropriate under our former code of civil procedure where the plaintiff was required to plead in his petition all of the facts constituting his cause of action. Under our present code of civil procedure which requires only 'notice' or 'claim' pleading, the former rule is not as workable from a practical standpoint. This was recognized in *Craig v. Hamilton,* supra. The rule to be applied today should be one which permits the parties to complete their discovery so that the basic issues involved in the case can be clarified and the essential nature of the action determined at a pretrial conference. It is at that stage of the litigation that the trial court should determine the issue whether a party is entitled to trial by jury as a matter of right.

"(6) The substance of the pleadings, not the form of the pleadings, determines the character of an action as equitable or legal in nature. (*Estey v. Holdren,* supra; *Russell v. Bovard,* 153 Kan. 729, 113 P.2d 1064; *Cloonan v. Goodrich,* 161 Kan. 280, 167 P.2d 303; *City of Osawatomie v. Slayman,* supra.) The fact that the plaintiff prays for a money judgment only is not controlling where the action is essentially one in equity. (*Sipe v. Taylor,* 133 Kan. 449, 300 Pac. 1076.)

"(7) Where a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all

purposes and determine all issues in the case so that a full, effective, and determinative decree adjusting the rights of the parties may be entered and enforced. (*Seibert and Lykins v. Thompson,* 8 Kan. 65; *Martin v. Martin,* 44 Kan. 295, 24 Pac. 418; *Sanders v. Visser,* 165 Kan. 336, 194 P.2d 511; *Place v. Place,* 207 Kan. 734, 486 P.2d 1354.)"

The fact that there are some legal issues in what is otherwise essentially an equitable case does not entitle one to a jury trial. When it is established that the essential nature of the case is equitable, the court will take jurisdiction for all purposes and determine all issues so as to administer complete relief. *Place v. Place,* 207 Kan. 734, 486 P.2d 1354 (1971); *Gaynes v. Wallingford,* 185 Kan. 655, 347 P.2d 458 (1959).

Koerner does not seriously contend that a peaceable entry and forcible detainer case is not normally an action at law. Substantial authority exists that it is an action at law. *McCracken v. Wright,* 159 Kan. 615, 619, 157 P.2d 814 (1945); *Stevens v. McDowell,* 151 Kan. at 319; *Dineen v. Olson,* 73 Kan. 379, 386, 85 Pac. 538 (1906); *Kellogg v. Lewis,* 28 Kan. 535, 537 (1882). What Koerner basically contends is that after the issues were framed at pretrial, the essential nature of the case was equitable and any questions of law that remained were only incidental thereto. He relies primarily on *Karnes Enterprise, Inc. v. Quan,* 221 Kan. 596. Karnes had leased a restaurant to the Quans. The lease called for a monthly rental payment equal to ten percent of the gross sales of the restaurant less sales tax. Karnes discovered that Quans were not reporting all of the gross sales and therefore were not paying enough rent. Karnes brought suit, asking for *possession* of the property, *rent* due and owing, an *accounting,* and punitive damages. The Quans admitted the lease, denied that any rent was past due and counterclaimed for malicious prosecution. They timely demanded a jury trial. The demand was denied and the Quans appealed, claiming there were legal issues and factual questions involved in the suit so that they were entitled to a jury trial. The Kansas Supreme Court rejected this claim, stating at 603:

"In this case the petition filed by Karnes Enterprises sought relief not only by way of money judgment but also types of relief which were essentially equitable in nature. At the time the case was filed the Quans were in possession of the restaurant premises. The petition prayed for cancellation of the lease and restoration of the property to the lessor. In addition the plaintiff specifically asked for an accounting of all amounts received by the Quans from the vending machines located on the restaurant premises. It should also be noted that in its demand for a money judgment for rentals due and unpaid the plaintiff requested judgment

against the Quans in the sum of $29,857.65 'together with any additional sums Plaintiff may be entitled to from Defendants as rentals . . .' It is obvious that the specific sum mentioned was the minimum estimate of what the plaintiff believed was owed to it by the Quans. When we consider the substance of the allegations set forth in the petition, we arrive at the inescapable conclusion that Karnes Enterprises, Inc. is seeking a full accounting of the gross receipts received by the restaurant business during the period the Quans operated the same. Considering the pleadings, the relationship of the parties, and the contentions of the parties in our judgment the district court did not err in denying to the defendants Quan a trial by jury. The essential nature of the action was one for an accounting grounded on equitable rights, and clearly one in which equitable relief was sought. Since the action was one in equity, the court properly proceeded to determine all issues in the case so as to render complete and final relief to the parties in the controversy."

In the case at bar, defendants admitted at pretrial that Koerner had title to the property, that they had fallen behind on their rent and that they had received proper notices while in default. Most of the remaining issues were equitable in nature, *i.e.*, defendant claimed an equitable interest by reason of labor furnished in erecting the building and claimed accord and satisfaction. Actions for the recovery of money are actions in law. The money damages sought in this case were (1) for past due rent, the amount of which was not in question, and (2) rent which the trial court equitably determined on the basis of reasonable value as opposed to the amount plaintiff claimed. The question of substantial performance is legal in nature. It was not the primary issue, however, and based on the admitted facts the trial judge well could have decided that issue summarily. The primary defense was that the lease-option contract should have been construed as a sale. The interpretation of a contract is a question of law for the court. *West v. Prairie State Bank*, 200 Kan. 263, Syl. ¶ 5, 436 P.2d 402 (1968).

Having reviewed the record in the manner in which we are required to view it, we are of the opinion that this case is analogous to *Karnes Enterprise, Inc. v. Quan*, 221 Kan. 596; that the trial judge correctly determined the essential nature of the action to be equitable in nature and no reversible error is found. Since it is essentially equitable in nature, the trial court properly determined all the issues in the case.

Affirmed.